[No. H033913. Sixth Dist. Aug. 30, 2010.]

DAVID CRITZER et al., Plaintiffs and Appellants, v.
JERRY ENOS et al., Defendants and Respondents.

## COUNSEL

Greene, Chauvel, Descalso & Minoletti, A.K. Abraham and Kenneth M. Weinfield for Plaintiffs and Appellants.

Law Offices of Jelinch & Rendler and Frank A. Jelinch for Defendant and Respondent Jerry Enos.

Law Offices of Tamara T. Costa and Tamara T. Costa for Defendant and Respondent Darien A. Tung.

Borton Petrini and Mark W. Shem for Defendant and Respondent Northpoint Homeowners Association.

## OPINION

**DUFFY, J.**—David and Margaret Critzer, owners of a townhome in a Cupertino project known as Northpoint, and their neighbor, Jerry Enos, had a dispute concerning a window installed in Enos's upstairs bathroom in February 2004. The Critzers ultimately brought suit against Enos, Darien A. Tung (Enos's successor in interest), and Northpoint Homeowners Association (HOA). After it was assigned out to trial, the lawsuit was purportedly settled in January 2008, and its terms were recited on the record. Three of the five parties gave their personal consent in court to the purported settlement. Months later, after the parties reached an impasse concerning the appropriate language for a formal written agreement, the HOA brought a motion to enforce settlement under Code of Civil Procedure section 664.6.[1] The court initially entered an order denying the Crtizers' request to insert three conditions in a formal agreement; requiring the parties to exchange language for a written agreement; and indicating that if the parties could not agree, it would select the appropriate settlement agreement from draft agreements submitted by the parties. After the parties were unable to reach an accord concerning the language of the agreement, the court entered an order enforcing settlement, holding that the HOA's version of the written agreement accurately reflected the parties' settlement, and declaring it binding on all parties.

The Critzers contend on appeal that the order enforcing settlement must be reversed. They argue that the court, by adjudicating controversies between the parties concerning the language in the formal settlement agreement, exceeded its authority under section 664.6. The HOA asserts in response[2] that the order is nonappealable and therefore should be dismissed. The HOA contends that if the matter is considered on the merits, the Critzers' proposed terms were not among those agreed upon by the parties, and the written agreement enforced by the court accurately reflected the parties' settlement that had been placed on the record.

We conclude that the order enforcing settlement finally determined the rights of the parties and therefore we will amend the order to include an appealable judgment. (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183 [84 Cal.Rptr.3d 689].) We thus hold that the matter is appealable. We conclude further that because there was neither an oral settlement all parties personally agreed upon, nor a written settlement agreement signed by all of the parties,

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] The respondents herein are the HOA, Enos and Tung. Only the HOA filed a brief; Tung filed a joinder in that brief, and Enos submitted a letter to this court in which he "concur[red], in its entirety, with the [HOA's] responding brief." For simplicity, we will refer to the contentions in response to the appeal as being those of the HOA.

the court lacked authority under the summary procedure of section 664.6 to enforce any settlement. Accordingly, we will reverse.

## PROCEDURAL BACKGROUND

The Critzers filed this action on January 19, 2005. In their second amended complaint of in or about July 2007, they alleged seven causes of action, namely, negligence against the HOA; private nuisance against Enos and Tung; invasion of privacy against Enos and Tung; breach of contract (the covenants, conditions and restrictions (CC&R's) applicable to Northpoint) against all defendants; breach of equitable servitudes against all defendants; breach of fiduciary duty against the HOA; and declaratory relief against all defendants.[3]

The Critzers alleged in the second amended complaint that in December 2003, Enos submitted an application to the HOA for approval of the proposed installation of a second-story bathroom window, the HOA approved it, and Enos thereafter submitted an application to the City of Cupertino for a building permit, which was approved.[4] They alleged further that as a result of the installation of the window that is directly east of the Critzers' living room window, Enos was thereby afforded an eye-level, direct view of the Critzers' entire living room to the farthest interior wall of that room, and conversely, the Critzers were thereby afforded a direct view from their living room of Enos's master bathroom. The Critzers claimed that they received no notice (as required under the CC&R's) of the application for, or approval of, the installation of Enos's window.

The case was assigned out to the Honorable James P. Kleinberg for jury trial on January 28, 2008. The matter was taken off calendar after the terms of a purported settlement were recited on the record two days later (the Settlement).[5] In August 2008, the HOA filed a motion to enforce settlement

---

[3] The record includes only a proposed (but signed) second amended complaint that was attached as an exhibit to the Critzers' motion for leave to file that pleading, as well as answers to the second amended complaint of the HOA, Tung, and Enos that were filed after the date noticed for hearing on said motion. We therefore infer that the court in fact granted the Critzers' motion and that the second amended complaint was the operative pleading.

[4] The Critzers filed a separate petition for writ of mandamus that involved the defendants herein, as real parties in interest, and the City of Cupertino, as defendant, that concerned the City's approval of the building permit for the installation of Enos's window. An appeal was taken from the court's denial of the writ petition and we affirmed the judgment in that other action in *Critzer v. City of Cupertino* (Dec. 21, 2009, H032801) (nonpub. opn.). We have taken judicial notice of our opinion in that other suit because it "help[s] complete the context of this case." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

[5] We use "Settlement" as a term of art to refer to the purported oral settlement of the parties recited in open court on January 30, 2008. In using this term, we do not imply that the

pursuant to section 664.6. The Critzers opposed the motion. After a hearing, Judge Kleinberg made an order on December 5, 2008, denying the Critzers' request to include specified language in the written agreement and requiring the parties to exchange settlement language. The court ordered further that if the parties could not agree, it would then select one version from competing settlement agreements submitted by the parties. Judge Kleinberg thereafter made a further order that acknowledged a continuing conflict concerning the settlement language, and concluded that the written agreement proposed by the HOA "conforms to and accurately memorializes the terms of the settlement reached by the parties and is consistent with the Court's rulings in this matter . . . [and would be ordered] binding on all parties as an Order of this Court." The Critzers filed a timely notice of appeal.

## DISCUSSION

### I. *Notice of Appeal and Appealability*

#### A. *Notice of Appeal*

Before addressing the HOA's contention that the Critzers' challenge to the order below is not appealable, we discuss a procedural quirk that, although not raised by the parties, must be considered because it is fundamental to the question of whether we may consider this appeal. The notice of appeal filed February 23, 2009, refers to and attaches the court's order filed January 30, 2009 (January 30 order), in which the court found that the HOA's draft of the settlement agreement accurately memorialized the parties' Settlement and declared it binding on all parties as a court order. The problem, however, is that the January 30 order contained the caption and case number for another action involving the parties and the City of Cupertino. It is evident from our review of the superior court's Web site (see <http://www.sccsuperiorcourt.org> [as of Aug. 30, 2010]) that the January 30 order was filed in that related action on January 30, 2009—when that case was pending on appeal before this court (see fn. 4, *ante*)—but was not filed in this case.[6] The trial court apparently became aware of this problem, since it subsequently filed an order in this action, using the correct caption and case number, on February 23, 2009 (February 23 order), which had the same text as the January 30 order except for the preamble: "This Order is identical in content to that Order of January 30, 2009 mistakenly filed in *Critzer v. City of Cupertino*, No. 1-06-CV-066535." The February 23 order differed from the January 30 order in one other respect in that it failed to attach as an exhibit

---

Settlement is one that was legally enforceable as such under section 664.6, or under any other procedural mechanism available for the enforcement of settlements.

[6] Although there does not appear to be a docket entry for its filing in this action, the January 30 order, for reasons that are unclear, nonetheless appears in the clerk's transcript in this case.

the HOA's version of the settlement agreement that the court was enforcing. Accordingly, the court filed an amended order on February 25, 2009, that was identical to the February 23 order except for the inclusion of the proper exhibit.

■ "[I]t is and has been the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289]; see also *D'Avola v. Anderson* (1996) 47 Cal.App.4th 358, 361–363 [54 Cal.Rptr.2d 689] [court liberally construed notice of appeal containing wrong case number of another case previously dismissed by appellant but properly referring to order being challenged]; Cal. Rules of Court, rule 8.100(a)(2) [appeal notice "must be liberally construed"].)

Clearly, the Critzers' appeal is substantively from the court's order finding the HOA's draft agreement to have accurately memorialized the parties' Settlement and declaring it binding on all parties. The fact that the order at first contained the wrong caption and was filed in a related case in which no motion was pending at the time[7] does not alter the fact that it is "reasonably clear what [they were] trying to appeal from" (*Luz v. Lopes, supra*, 55 Cal.2d at p. 59), and the HOA is neither prejudiced nor misled from our liberal construction of the notice of appeal to embrace the February 23 order correctly filed in this action. Therefore, we will liberally construe the notice of appeal to embrace a challenge of the February 23 order, as amended on February 25.[8]

---

[7] Indeed, since an appeal was then pending in this court in that related action (*Critzer v. City of Cupertino, supra*, H032801), the trial court lacked jurisdiction at the time to enter an order such as the one at issue here. (See § 916; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189–190 [25 Cal.Rptr.3d 298, 106 P.3d 958].)

[8] The record is silent as to whether the February 23 notice of appeal was filed prior to the February 23 order. Were this the case, it could be argued that the appeal notice divested the trial court of jurisdiction to enter the February 23 order. (See § 916.) It is clear, however, that the trial court originally intended to enter its order in this case on January 30, 2009, and that, but for an erroneous caption and case number, this would have occurred. Therefore, since it is clear that the appellate challenge is in substance to the misfiled January 30 order, and although neither the February 23 order nor the amended order of February 25 specifically recited that its entry was nunc pro tunc, we will deem both orders to have been entered nunc pro tunc as of January 30, 2009. (See *Norton v. City of Pomona* (1935) 5 Cal.2d 54, 62 [53 P.2d 952] [where party was entitled to judgment, but, through no fault of party, it was not entered, court may enter judgment nunc pro tunc to date it should have been entered]; *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 884, fn. 11 [60 Cal.Rptr.2d 830] [appellate court deemed order to have been entered nunc pro tunc].)

B. *Appealability*

The HOA contends that this case should be summarily disposed of because the order being challenged by the Critzers is not appealable. It claims that the order is neither a final judgment nor a final order and is hence not reviewable on appeal. The HOA contends that the Critzers' proper remedy, which they failed to employ, was a motion for reconsideration.[9] The Critzers respond that the order being challenged finally adjudicated all of the claims in the action and was therefore appealable.

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment. [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 [107 Cal.Rptr.2d 149, 23 P.3d 43] (*Griset*).) Regardless of whether an appealability challenge is raised, "[t]he existence of an appealable judgment is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1. [Citations.]" (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126–127 [32 Cal.Rptr.2d 275, 876 P.2d 1074].)

In *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 206–208 [265 Cal.Rptr. 620] (*Viejo Bancorp*), the court held that a motion under section 664.6 to enforce a settlement reached in prior litigation may not be brought in a subsequent action. The *Viejo Bancorp* court first addressed whether the judgment under which the court purported to grant the plaintiff's motion to enforce a settlement reached in prior litigation was "appealable even though it [did] not finally conclude the new action." (*Viejo Bancorp*, at p. 205.) The court concluded that the matter was appealable: " 'Although the law relating to appealability speaks in terms of orders or judgments,' it is well established 'that it is not the label but rather the substance and effect of a court's judgment or order which determines whether or not it is appealable. [Citation.]' [Citation.] Here, it is clear the trial court intended to effect a final judgment in the old action. Since the intended substance and effect of the judgment is to finally dispose of the old action, the judgment is appealable

---

[9] The HOA cites no authority for this proposition and we therefore disregard it. (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [127 Cal.Rptr.2d 917] ["We need not consider an argument for which no authority is furnished."].) In any event, the argument makes little sense, because a motion for reconsideration could only have been brought by the Critzers if their challenge to the order was based upon "new or different facts, circumstances, or law . . . ." (§ 1008, subd. (a).) There is nothing in the record to suggest that there was such a statutory basis for the Critzers' having moved for reconsideration of the order.

under Code of Civil Procedure section 904.1, subdivision (a). It is also appealable even though we ultimately conclude the judgment is void." (*Ibid.*; see also *Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1046, fn. 3 [119 Cal.Rptr.2d 416].)

In arguing here that the court's order enforcing settlement is not appealable, the HOA relies on *Doran v. Magan* (1999) 76 Cal.App.4th 1287 [91 Cal.Rptr.2d 60] (*Doran*). In *Doran*, the court held that an order denying a section 664.6 motion is a nonappealable interlocutory ruling. (*Doran*, at pp. 1292–1294.) The court explained, "It is the substance and effect of the adjudication, and not the form, which determine if the order is interlocutory and nonappealable, or final and appealable. [Citation.] If no issues in the action remain for further consideration, the decree is final and appealable. But if further judicial action is required for a final determination of the rights of the parties, the decree is interlocutory. [Citation.] The decree will not be appealable 'unless it comes within the statutory classes of appealable interlocutory judgments.' [Citations.]" (*Id.* at p. 1293.) The *Doran* court therefore held that an order denying a motion to enforce a settlement agreement is not "a final judgment, but rather *denial* of a motion for judgment. The denial of the motion, rather than finally disposing of the action, expressly leaves it open." (*Ibid.*)

■ *Doran* does not control our decision here for the obvious reason that it concerned the *denial* of a motion under section 664.6, while the court here *granted* the HOA's motion to enforce settlement. Thus, we find that *Viejo Bancorp, supra*, 217 Cal.App.3d at page 205, holding that a judgment on an order granting a motion to enforce settlement under section 664.6 is appealable, is controlling.

■ It is true that the court, in its order granting the HOA's motion to enforce settlement, did not formally use the word "judgment" as provided under the statute. (See § 664.6 ["the court, upon motion, may enter judgment pursuant to the terms of the settlement"].) " 'A judgment is final "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." ' [Citations.]" (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 [63 Cal.Rptr.2d 74, 935 P.2d 781].) As the high court has further explained: " 'It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of

compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' [Citations.]" (*Griset, supra,* 25 Cal.4th at pp. 698–699.)

██ Here, "the substance and effect of the adjudication, and not the form" (*Doran, supra,* 76 Cal.App.4th at p. 1293), demonstrate that the court's order granting the HOA's motion finally disposed of the litigation. There was nothing left for the court to do other than enforce its order, and the HOA, notwithstanding its urging that the order is not final, identifies no further matters to be determined in the case. The Second District Court of Appeal (Div. Three), recently addressing similar circumstances, held: "The court here granted the motion [to enforce settlement] under Code of Civil Procedure section 664.6, but failed to enter a formal judgment. Absent a formal entry of judgment, an appellate court may amend an order to include a judgment if the effect of the order is to finally determine the rights of the parties in the action. [Citation.] We conclude that the effect of the order here was to finally determine the rights of the parties in this action by enforcing the settlement agreement. Accordingly, we will amend the order to include an appealable judgment so as to expedite appellate review." (*Hines v. Lukes, supra,* 167 Cal.App.4th at p. 1183, citing *Griset, supra,* 25 Cal.4th at pp. 698–700.)

We therefore conclude that, although it would have been preferable for the court to have disposed of the HOA's motion by entering judgment as specified in section 664.6, the order here finally determined the rights of the parties. Therefore, "we will amend the order to include an appealable judgment so as to expedite appellate review." (*Hines v. Lukes, supra,* 167 Cal.App.4th at p. 1183.)

## II. *Motions to Enforce Settlement Under Section 664.6*

██ The Second District Court of Appeal, Division Two, has succinctly described the nature of motions brought pursuant to section 664.6: "Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit. [Citations.] . . . Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809–810 [71 Cal.Rptr.2d 265]; see also *Terry v. Conlan* (2005) 131 Cal.App.4th 1445 [33 Cal.Rptr.3d 603] [court

erred in granting § 664.6 motion where record demonstrated no meeting of minds concerning material terms of settlement].)

The trial court's factual findings on a motion to enforce a settlement under section 664.6 "are subject to limited appellate review and will not be disturbed if supported by substantial evidence." (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162 [64 Cal.Rptr.2d 571].) In instances involving questions of law, including the construction and application of the statute, the trial court's decision is not entitled to deference and will be subject to independent review. (*Ibid.*) For example, where the principal claim of error "raises a question of law concerning the construction and application of section 664.6[, . . .] it requires independent review. [Citations.]" (*Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1116 [127 Cal.Rptr.2d 370], fn. omitted (*Gauss*).)

### III. *Whether Purported Settlement Is Enforceable Under Section 664.6*

The record discloses that when the Settlement was recited on the record on January 30, 2008, two of the five parties did not personally give their consent to it. Because this raises a serious question as to whether the statutory requirements of enforcing a settlement under section 664.6 were satisfied, we address the issue below. Additionally, in view of the fact that the apparent absence of the parties' personal consent to the oral Settlement was not a focal point of either the Critzers' opposition to the motion or of their appeal, we also address below whether any enforceability argument should be deemed forfeited.[10]

#### A. *Enforceability of Purported Settlement*

Section 664.6 provides as follows: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

---

[10] Both parties acknowledged in their briefs that not all parties gave their formal consent at the time to the oral Settlement, but they did not elaborate on the potential legal effect of this circumstance upon the enforceability of the Settlement under section 664.6. Accordingly, we requested that the parties submit supplemental letter briefs on both the substantive issue and on whether the question should be deemed forfeited. We have considered those supplemental briefs in reaching our conclusions in this opinion.

The Supreme Court has addressed the meaning of the term "parties" in the context of whether a section 664.6 motion may be brought to enforce a settlement for which there was a purported written agreement that was not signed by all litigants themselves, but was signed by attorneys on behalf of their clients. (See *Levy v. Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171] (*Levy*).) After observing that the statute requires a stipulation by the "parties" to pending litigation, the court concluded the term "parties" must be interpreted literally to mean the litigants themselves. (*Id.* at p. 586.) Although the term "party" is recognized in other contexts as including the litigant's attorney of record (e.g., § 437c), the court determined the Legislature intended "a narrower meaning" for the word, "namely the specific person or entity by or against whom legal proceedings are brought. [Citations.]" (*Levy, supra,* at p. 583.) The court reasoned that, unlike other steps an attorney takes in managing a lawsuit, settlement ends the lawsuit and is thus "such a serious step that it requires the client's knowledge and express consent. [Citation.]" (*Ibid.*) In holding that enforcement of a settlement pursuant to section 664.6 requires the personal assent of the litigants themselves, the court reasoned: "[I]n 1981[,] . . . the Legislature enacted section 664.6, which created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met. Thus the statute requires the 'parties' to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent. [Citation.]" (*Levy,* at p. 585, fn. omitted.) Because one of the parties in *Levy* did not personally sign the settlement agreement, the Supreme Court concluded that the purported settlement agreement confirmed in writing by the parties' attorneys could not be enforced under the procedural mechanism of section 664.6. (*Levy,* at p. 586.)[11]

*Johnson v. Department of Corrections* (1995) 38 Cal.App.4th 1700 [45 Cal.Rptr.2d 740] (*Johnson*) addressed whether the *Levy* requirement under section 664.6 of the parties' personal approval of a written settlement agreement applied equally to oral settlements recited before the court. In *Johnson,* after the case was assigned out to trial, a settlement was recited on

---

[11] In so holding, the court observed that there are procedural devices other than a motion under section 664.6, such as summary judgment or a separate action, that may be available for the enforcement of a settlement. (*Levy, supra,* 10 Cal.4th at p. 586, fn. 5.)

the record with counsel present. (*Johnson*, at pp. 1703–1704.) Because the purported oral settlement was never acknowledged on the record by the plaintiff himself, the court, following *Levy*, held that the trial court erred in enforcing it under section 664.6, reasoning: "Settlement negotiations were handled by the parties' attorneys and the court. While the attorneys orally agreed to the settlement during judicially supervised negotiations, and thus orally stipulated to the agreement 'before the court' [citations], [the] plaintiff never personally informed the court that he accepted the terms of this agreement. Absent this personal involvement, the agreement is not enforceable under section 664.6." (*Johnson*, at pp. 1707–1708.) In so holding, the court rejected the defendants' argument that *Levy* applied only to written settlement agreements for which enforcement under section 664.6 was sought, and did not apply to oral settlements recited in open court. (*Johnson*, at p. 1708; see also *Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 440 [118 Cal.Rptr.2d 502] [§ 664.6 requires oral consent in court or the signatures of the parties themselves; consent by attorneys or spouses insufficient].)

Similarly, in *Murphy v. Padilla* (1996) 42 Cal.App.4th 707 [49 Cal.Rptr.2d 722] (*Murphy*), we rejected the argument that an oral settlement agreement ratified by the party's attorney, acting as the party's agent, was enforceable under section 664.6. "The *Levy* and *Johnson* opinions appear to reject traditional agency analysis, which holds that ' "the client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied) or his apparent or ostensible authority; or by unauthorized acts ratified by the client." ' [Citation.] [¶] . . . [¶] In the underlying case, *Levy* and *Johnson* prevent respondents from relying on agency principles to satisfy the requirements of section 664.6. Accordingly, if appellant did not personally agree to the alleged oral settlement before Judge Bonney, an additional ground exists for concluding that enforcement under section 664.6 was improper." (42 Cal.App.4th at p. 716, fn. omitted.)

Since *Levy*, several cases have addressed the question of whether *all* parties must personally assent to a settlement in order for it to be enforceable under section 664.6, or whether it is sufficient that the party against whom the settlement is being enforced has personally assented. In *Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 303 [87 Cal.Rptr.2d 822] (*Harris*), the plaintiff in a legal malpractice suit against a law firm and five individuals sought to enforce a purported written settlement agreement that consisted of a letter of counsel which two of the individual defendants had signed "under a notation reading '[a]ccepted and agreed.' " The letter agreement was not signed by the plaintiff or by the other defendants. (*Ibid.*) The trial court denied the plaintiff's motion to enforce the settlement because "the statutory prerequisites of section 664.6 had not been satisfied . . . [in that] not

all of the parties in the action [had] signed the [l]etter." (*Ibid.*) The court in *Harris* affirmed. In so holding, the court rejected the plaintiff's arguments that "[(1)] the statute's requirement of a 'writing signed by the parties' does not expressly require *all* the parties in the action to sign the settlement agreement [and (2)] . . . section 664.6 [is similar] to the statute of frauds requiring only the 'part[ies] to be charged' to sign the writing. (See Civ. Code, § 1624.)" (*Id.* at p. 304.) The *Harris* court held: "We read the statute's requirement of a writing 'signed by the parties' to require the signatures of the parties seeking to enforce the agreement under section 664.6 and against whom the agreement is sought to be enforced. Although there is no direct authority interpreting the term 'parties' in such a way, such an interpretation is consistent with our Supreme Court's opinion in *Levy*[, *supra*,] 10 Cal.4th [at p.] 585 . . . ." (*Id.* at p. 305.)

Similarly, in *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30 [126 Cal.Rptr.2d 400] (*Sully-Miller*), a purported written settlement agreement was signed by the plaintiffs; however, because they did not receive the contemplated consideration in a timely manner, they revoked their offer to settle, and the trial court granted the remaining parties' motion to enforce the purported settlement. (*Id.* at pp. 33–35.) The appellate court concluded that this was error. Citing *Harris, supra*, 74 Cal.App.4th at pages 304–306, it observed that the provisions of section 664.6 could be invoked to enforce a written settlement agreement only if it has been signed by all parties. (*Sully-Miller*, at p. 37.) "We conclude that a party cannot satisfy section 664.6's signature requirement simply by adding its signature to a document that does not call for it. The purpose of section 664.6's signed writing requirement—to provide unequivocal proof of the parties' intent to enter a binding settlement—would be frustrated if courts enforced written agreements pursuant to that section where, as here, the agreement only contemplates the signature of one party. Section 664.6 requires the parties' signatures because 'settlement is such a serious step that it requires the client's knowledge and express consent. [Citation.]' [Citation.] A party's signature fails to convey such knowledge and consent unless it is contained in a document that was clearly intended by that party to be a binding settlement agreement. [¶] Because of its summary nature, strict compliance with the requirements of section 664.6 is prerequisite to invoking the power of the court to impose a settlement agreement. The ad hoc addition of a party's signature that was neither contemplated in the original document nor bargained for is simply insufficient to render the document enforceable under section 664.6." (*Ibid.*)

Finally, in *Gauss, supra*, 103 Cal.App.4th 1110, the defendant in consolidated appeals argued that the trial court had erred in granting section 664.6

motions to enforce settlement because the defendant had not personally signed the settlement agreements; rather, they were signed by the defendant's agent, its attorney. (*Gauss*, at pp. 1112–1113.) The appellate court—citing, inter alia, *Levy, supra*, 10 Cal.4th 578, *Harris, supra*, 74 Cal.App.4th 299, *Sully-Miller, supra*, 103 Cal.App.4th 30, and *Murphy, supra*, 42 Cal.App.4th 707—concluded that because there was no writing indicating the defendant's consent to settle, the purported written settlement was not enforceable under section 664.6. (*Gauss*, at pp. 1116–1121.)

Here, the record demonstrates that the oral Settlement the HOA sought to enforce was recited in open court on the record on January 30, 2008. The previous day, the court recited the terms of a settlement on the record, and the Critzers' attorney and Tung's attorney each added clarifications to the recital. No party voiced his/her/its assent on the record on January 29. On January 30, after the HOA's attorney recited the terms of the Settlement, and after a clarification from Tung's counsel, the court obtained the consent of David Critzer, Margaret Critzer, and Tung. The court indicated that Enos was not present, but Enos's attorney, Frank Jelinch, indicated that he had authority for his client, had spoken with him, and Enos was "agreeable." There was no consent to the Settlement given by the HOA; indeed, the record does not reflect whether a representative of the HOA was present at the January 30 hearing.

The HOA's motion to enforce settlement pursuant to section 664.6 brought in August 2008 contained the assertion that the parties had settled the case on January 30, 2008, and recited the terms of the Settlement by reference to the matters contained in the reporter's transcript. The motion clearly indicated that the Settlement was reached on January 30 and that it was enforceable under section 664.6. We therefore conclude that—addressing the issue without reference to whether the contention may have been forfeited (see pt. III.B., *post*)—the oral Settlement was not enforceable under section 664.6. Plainly, there was no personal consent to the recited terms of the Settlement by two of the five parties, the HOA and Enos. Any claim that the Settlement was nonetheless effective because it was expressly consented to by Enos's agent (Jelinch), and perhaps impliedly consented to by the HOA's agent (Attorney Mark Shem, who recited the terms of the Settlement), lacks merit. Under *Levy, supra*, 10 Cal.4th 578, in order for a settlement to be enforceable under section 664.6, the consent to settlement must have been given by the party, personally, and courts have rejected agency arguments posed to circumvent the party-consent requirement. (See *Gauss, supra*, 103 Cal.App.4th at pp. 1118–1119; *Murphy, supra*, 42 Cal.App.4th at p. 716 & fn. 7.) Additionally, the fact that the Critzers gave their personal consent to the terms of the oral Settlement—as the parties against whom the Settlement

is being enforced—does not obviate the necessity of the personal consent of the remaining parties, including the HOA and Enos. (*Harris, supra,* 74 Cal.App.4th at pp. 304–305.) Moreover, there is no basis for making a distinction between oral settlements and written settlements: Both forms of settlements, in order to be enforceable under section 664.6, require the personal consent of all parties. (*Johnson, supra,* 38 Cal.App.4th at p. 1708.)

The HOA claims—in both its brief and supplemental letter brief (see fn. 10, *ante*)—that under *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421 [129 Cal.Rptr.2d 41] (*Elyaoudayan*), the oral Settlement was enforceable because it was later formally agreed to by the HOA and Enos when a draft agreement was prepared by the HOA's counsel and signed separately by the HOA and Enos.[12] *Elyaoudayan* is distinguishable and does not support the HOA's argument. There, an oral settlement was recited on the record and was personally consented to by some, but not all, of the parties. (104 Cal.App.4th at p. 1426.) The two parties who did not give their consent at the hearing later signed a stipulation attaching the transcript of the court proceedings in which the settlement was recited. (*Ibid.*) The *Elyaoudayan* court held that because "[a]ll parties agreed to the settlement in one form or the other or both" (*id.* at p. 1432), it was immaterial that some of the parties merely signed the agreement attaching the court transcript while others gave their oral consent in court.

Here, neither the HOA nor Enos orally consented at the hearing to the Settlement. Likewise, neither the HOA nor Enos gave its or his subsequent written consent by signing a writing attaching the reporter's transcript (reciting the Settlement terms). The fact that a representative of the HOA— some three and one-half months after the oral Settlement—signed a formal document prepared by its counsel (entitled "Mutual Release of All Claims and Settlement Agreement and Covenant Not to Sue")—does not alter the circumstances that, unlike in *Elyaoudayan,* the HOA neither orally agreed to the Settlement at the time nor agreed in writing by signing a document attaching the court transcript reciting the terms of the Settlement. Similarly, the fact that Enos signed a version of a written settlement agreement on a

[12] The respondent's brief filed by the HOA is noncompliant in that it fails to contain any proper citations to the appellate record—either the clerk's or reporter's transcript—supporting matters referred to in the court below. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [matters referenced from the record in appellate briefs must be supported "by a citation to the volume and page number of the record where the matter appears"].) In instances where an appellate brief's noncompliance with this rule is substantial, the court may order the brief stricken. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 [94 Cal.Rptr.3d 802].) We have nonetheless overlooked this noncompliance and have considered the contentions and factual assertions made by the HOA in its brief.

date unknown—which version apparently differed from the version signed by the HOA—does not change the fact that Enos neither orally consented to the Settlement on January 30 nor signed a document attaching the court transcript that contained a recital of its terms.

Moreover, we reject the HOA's assertion in its supplemental letter brief that *Elyaoudayan* is controlling because, by signing the written settlement agreement, the HOA and Enos agreed in writing to the same terms that were recited in court on the record and orally agreed to months earlier by the Critzers and Tung. While, in a superficial sense, this argument may seem plausible—because the later written agreement incorporated the essential terms that were recited in January and in some sense merely represented the formalized agreement that often follows after the parties reach an oral settlement of a case at a settlement conference—there are very real differences between the written agreement and the prior oral Settlement agreed to by three of the parties. These include the following provisions found in the written agreement that are not in the oral Settlement: (1) the release does not apply to a related civil writ action; and (2) any ambiguity or dispute about the interpretation of the agreement is to be construed to the fullest extent possible as effecting a release of the Critzers' claims (i.e., a clause favoring defendants). Also, the provision in the written agreement concerning Judge Kleinberg retaining continuing jurisdiction is significantly broader than what was recited in the oral Settlement.[13] Accordingly, because there were differences between the oral Settlement and the terms of the written settlement agreement later signed by the HOA and Enos, unlike the circumstances in *Elyaoudayan* "[a]ll parties [did not] agree[] to the settlement in one form or the other or both." (*Elyaoudayan, supra*, 104 Cal.App.4th at p. 1432.)

Finally, the HOA argues in its supplemental letter brief that the HOA's personal consent was not needed to enforce the settlement because the HOA was being defended under a general liability insurance policy, and it is generally the case that "the named party does not have the right to consent to any settlement made on its/his/her behalf." In support of this position, the HOA cites *Fiege v. Cooke* (2004) 125 Cal.App.4th 1350 [23 Cal.Rptr.3d 496]

---

[13] In the oral Settlement, it was recited: "In the event there is a dispute as to the opaqueness and design of the window, it will be referred to [Y]our Honor for final adjudication on that issue." It was further recited: "The Court again will retain jurisdiction to effectuate the terms of the settlement, again, on the issues of the opacity of the glass as well as the design if there is a dispute." The written agreement signed by the HOA and Enos, on the other hand, provided: "The Santa Clara County Superior Court, the Honorable James Kleinberg, shall have continuing jurisdiction over the parties and this litigation to finalize, execute and enforce the terms and conditions of this release. Further, the court shall retain jurisdiction to decide any issues regarding the opaqueness of the proposed glazing for the awning window to be installed and the design of such glazing should the parties be unable to reach an agreement. The Court shall also retain jurisdiction to resolve any disputes on the type of lattice tresses through noticed motion."

(*Fiege*). There, the court, relying extensively on *Robertson v. Chen* (1996) 44 Cal.App.4th 1290, 1293–1296 [52 Cal.Rptr.2d 264], held that where the settlement was orally agreed to by the plaintiff and the defendants' insurers (but not the insureds), and the policies provided that the insurers could settle without the insureds' consent and could bind the insureds to the settlement, the plaintiff could not thereafter escape from the settlement being enforced under section 664.6 because of the absence of the insureds' oral consent. (*Fiege*, at pp. 1353–1355.) The HOA argues that "[s]ince defense counsel indicated [the HOA's] approval of the settlement on the record, pursuant to *Fiege*, [the HOA] party approved of the settlement in open court."

There are three problems with this argument. First, the HOA does not cite to any portion of the record that demonstrates that the HOA was being defended under a general liability insurance policy under which the HOA gave its insurer the right to settle without the HOA's consent and the right to bind the insured to the settlement. Second, the record from the Settlement recited on January 30, 2008, does not reflect the agreement of the *insurer* (let alone the insured, HOA) to its terms. It is unclear whether the insurer was even present in court when the terms were recited. Thus, even were the record to have demonstrated that the HOA was insured under an insurance policy that permitted settlement by the insurer alone, there was no consent by the insurer. (Cf. *Fiege, supra*, 125 Cal.App.4th at pp. 1355–1356 [concluding that insurer agreed to oral settlement when its representatives were in court, heard the settlement recited, and did not object after the court asked if anyone had addenda or disagreements with its terms].) Third, even if *Fiege* applied here to eliminate the problem of the absence of the HOA's personal consent, the HOA's argument does not address the problem of the absence of Enos's personal consent to the oral settlement.

We therefore conclude that the oral Settlement recited in court on January 30, 2008, could not be enforced under section 664.6 because it was not personally consented to by two of the parties.

### B. *Possible Forfeiture of Contention*

The absence of all parties' consent to the Settlement and the consequent enforceability issue notwithstanding, we must consider whether any challenge that the Critzers may raise to the court's order on this basis is forfeited. This requires a review of the Critzers' arguments both below and on appeal.

In their written opposition to the HOA's motion to enforce below, the Critzers did not argue that the Settlement was unenforceable because of the absence of consent by the HOA and Enos. Their opposition was to the effect that (a) the proposed settlement language in the formal settlement documents

prepared by the HOA's counsel after January 30 was heavily slanted toward defendants; (b) the court should not enforce a settlement that contains terms that are unjust to the Critzers; and (c) if the court could not resolve the parties' disputes concerning settlement language, the court should enforce the Settlement terms as limited to what was recited on the record on January 30. At the hearing, the Critzers' counsel, A.K. Abraham, argued principally that there were a number of matters that had been inserted in the draft settlement agreement that had not been part of the Settlement recited in court. Abraham, however, noted that not all of the parties had given their assent when the Settlement was recited on the record and raised a question as to whether the matters recited in court were subject to enforcement under section 664.6. Abraham argued: "The difficulty is that had we articulated the entire settlement terms on the record. [*Sic.*] And had the record been truly a 664.6 settlement, which it was not inasmuch as the HOA's representative was not there to affirm the terms, that would have been one thing. Rather, what the Court and the parties did . . . was to give the broad strokes of a settlement agreement and allow the parties then time to work out primarily boilerplate issues. . . ."

On appeal, the Critzers observe in passing that "[n]either Enos nor the HOA were [*sic*] present at the time of the January 30, 2008 hearing. . . . Nor did the HOA consent to all of the terms at that time through its counsel, but rather agreed to have its [b]oard of [d]irectors consider some of the terms for approval at a later meeting. . . . Both the HOA and Enos subsequently signed off on the enlarged written settlement agreement which the court directed the HOA's attorney to draft. . . ." Further, although the Critzers' position here is that the January 30 Settlement was "skeletal" and that the parties all contemplated that further "specific terms and conditions [needed] to be fleshed out by counsel in subsequent discussions," they do not address frontally the issue that we have discussed above: namely, whether the failure of all parties to consent to the terms of the Settlement, of itself, precludes enforcement under section 664.6. But the Critzers do note: "Moreover, because two of the defendants were not present and thus never stipulated to the settlement read into the court record—but later signed a document containing numerous additional terms—they cannot be said to have agreed to the same provisions as the other parties. . . . Since the parties here did not all agree to the same terms, [section] 664.6 is, as a matter of law, inapplicable to the 'agreement' which defendants seek to enforce. . . ."

■ It is a fundamental proposition that " '[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . .' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].) Likewise, an appellant's

failure to raise an issue on appeal may result in a forfeiture of the issue. (*Children's Hospital & Medical Center v. Bonta'* (2002) 97 Cal.App.4th 740, 777 [118 Cal.Rptr.2d 629].)

 Here, although the Critzers could have been more expansive in their discussion of whether the absence of consent by all parties precluded enforcement of the Settlement under section 664.6, we conclude that they raised the issue sufficiently below and before this court to preclude its forfeiture. Moreover, "when the issue involves undisputed evidence and raises a pure question of law, we may consider it for the first time. [Citation.]" (*Burckhard v. Del Monte Corp.* (1996) 48 Cal.App.4th 1912, 1918 [56 Cal.Rptr.2d 569] [court addresses legal question of whether absence of party's signature on writings confirming settlements precluded enforcement under § 664.6, despite party's failure to raise issue at trial].) We therefore conclude that it is appropriate to consider whether the oral Settlement is enforceable under section 664.6 despite the absence of the personal consent of the HOA and Enos.

### C. *Conclusion*

 The fact that not all of the parties gave their personal consent to the Settlement precluded the court from granting a motion to enforce under section 664.6, even though the Critzers themselves personally consented to the oral Settlement. (*Harris, supra,* 74 Cal.App.4th at p. 303; *Johnson, supra,* 38 Cal.App.4th at pp. 1707–1708.) While, on the surface, this result may seem to exalt form over substance, the statute is clear and "[b]ecause of its summary nature, strict compliance with the requirements of section 664.6 is prerequisite to invoking the power of the court to impose a settlement agreement." (*Sully-Miller, supra,* 103 Cal.App.4th at p. 37.) Moreover, "[t]he litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent. [Citation.]" (*Levy, supra,* 10 Cal.4th at p. 585, fn. omitted.) The controversy here in which the parties have differing views on the substance of the actual settlement exemplifies the rationale for requiring the personal consent of all parties for an enforcement proceeding under section 664.6, as explained in *Levy*.[14]

---

[14] We summarily deny the HOA's separate motion for sanctions pursuant to California Rules of Court, rule 8.276, in which the HOA contends that the Critzers and their counsel are pursuing an appeal that is frivolous. In light of our conclusion that the matter must be reversed, the appeal herein is not frivolous.

## DISPOSITION

The order granting the motion to enforce settlement pursuant to section 664.6, as amended to constitute a final appealable judgment (*Hines v. Lukes, supra*, 167 Cal.App.4th at p. 1183), is reversed.

Rushing, P. J., and Elia, J., concurred.