Filed 11/21/22  Alpinieri v. Alpinieri CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STEVEN ALPINIERI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LOUIS J. ALPINIERI,<br><br>    Defendant and Appellant. | D079217<br><br><br><br>(Super. Ct. No.<br>  37-2017-00012192-PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julia Craig Kelety, Judge.  Affirmed.

Cunneen Booth, Dawn Hall Cunneen and Jess Raymond Booth for Defendant and Appellant.

Hughes & Pizzuto, Shannon Noelle Montisano and Anne Marie Rudolph for Plaintiff and Respondent.

Louis J. Alpinieri appeals a probate court order in favor of his son, respondent Steven Alpinieri.[1]  The order requires Louis to comply with the

---

[1]    To avoid confusion, we refer to the parties by their first names, and intend no disrespect.

parties' settlement agreement by executing a waiver of his right to his confidential medical information under the Health Insurance Portability and Accountability Act (HIPAA), as well as permitting Steven visitation rights when Louis is in a health care facility.

Louis contends the probate court erred by ruling he could not include in the HIPAA waiver additional information regarding his concerns about Steven accessing his medical information. Louis also argues that if we reverse the order, Steven would not be the prevailing party and therefore this court should reverse the probate court's separate order awarding Steven attorney fees and costs. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Parties' Agreement*

To resolve their probate-related disputes, the parties dismissed their probate court claims against each other and entered into an "agreement of settlement and mutual general release" (capitalization omitted, hereafter the settlement agreement), which the probate court approved. The settlement agreement's section 3.16 states: "Louis agrees to execute a HIPAA waiver as to Louis' confidential medical information and to include Steven's right to visitation with Louis in a health care facility." The agreement provides that the San Diego Superior Court "shall retain jurisdiction to enforce this agreement," which is enforceable under Code of Civil Procedure[2] section 664.6, subdivision (a).

*Steven's First Motion to Enforce the Settlement Agreement*

After Louis failed to execute a HIPAA waiver, Steven brought a motion to enforce the settlement agreement, which the probate court granted, ordering Louis to "execute a HIPAA waiver in favor of Steven that includes a

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

provision allowing some measure of reasonable visitation by [Steven] if and when [Louis] resides in a health care facility." The court stated at the hearing: "The settlement agreement doesn't bar [Louis] . . . from telling his doctors whatever he wants to tell his doctors. He just needs to sign the HIPAA release, that's all. I have no idea—I thought this was a very strange provision and I had no idea. But he bargained for it . . . ." The court added: "So on the visitation side [Louis] has recourse there as long as he's not in a nursing facility. . . . [H]e can get a restraining order, call the cops, whatever, to keep Steven away, because Steven has no rights to visitation under this agreement now while [Louis is] not in a facility. . . . And as to the HIPAA waiver, [Louis] signed the waiver as to confidential information, so Steven can be kept apprised of his father's medical condition. But if it becomes abusive, then there are remedies there as well . . . ."

Louis did not appeal from that order. Instead, he provided a two-page "authorization for release of protected health information," (capitalization omitted) authorizing his health care providers to release to Steven "[a]ll health information pertaining to my medical history, mental or physical condition, and treatment received." However, the waiver goes on to state: "I have been estranged from my son, Steven, for many years due to litigation between us that arose as a result of him stealing from me. Steven and I settled the litigation between us in 2017. As part of that settlement, I agreed to provide a HIPAA waiver in favor of Steven. I believed that I could revoke the HIPAA waiver, if I felt it necessary for my safety. The court, however, disagreed and recently ordered me to comply with the terms of the settlement agreement. [(]See the March 10, 2021 minute order of the San Diego Superior Court, Probate Division, which is attached hereto as <u>Exhibit 1</u> and incorporated herein by this reference.[)]  [¶]  I do not feel comfortable with

3

Steven having access to my protected health information. After the settlement agreement was reached, Steven continued to harass me when I did not want to rekindle our relationship. The police have been contacted on multiple occasions when Steven has caused disturbances at my home. While I do not wish to provide my protected health information to Steven, the court is ordering me to provide this authorization. [¶] Nevertheless, I ask that any health care provider presented with this authorization by Steven consider whether to exercise its/her/his powers under HIPAA not to release my protected health information." (Some capitalization and italics omitted.)

Louis adds in the waiver: "The authority given to Steven herein shall **NOT** supersede any prior instrument or agreement that I may have provided to and/or made with any health care provider to restrict access to, or the disclosure of, my health and medical information. Rather, the authority given to Steven herein shall only supplement and be considered in conjunction with any prior instrument or agreement that I may have provided to and/or made with any health care provider to restrict access to, or the disclosure of, my health and medical information. [¶] Although information disclosed by a health care provider according to this authorization is subject to re-disclosure and may no longer be protected by the privacy rules of HIPAA (45 [C.F.R.] § 164 [(2013)]), California law prohibits the further disclosure of this information without a 'new authorization.' It is my intention that this authorization form **NOT** be construed to be a 'new authorization' that meets the requirements of . . . Civil Code [section] 56.11 for purposes of . . . Civil Code [section] 56.13."

Louis executed a separate visitation authorization, which repeats verbatim some of his concerns about Steven.

*Steven's Second Motion to Enforce the Court's Order*

Steven filed a second motion to enforce the settlement agreement, contending Louis's HIPAA waiver failed to comply with the court's order: "By including unverified allegations of harassment and essentially directing health care providers to not disclose any information to Steven, the HIPAA waiver provides Steven with no realistic ability to obtain Louis' medical information, as no reasonable health care provider would disclose any information in light of the directions and allegations made by Louis in the document. The HIPAA waiver completely deprives Steven of the benefit of a material term of the settlement agreement for which he bargained." (Some capitalization omitted.)

Louis argued in opposition: "Steven failed to negotiate the form of the HIPAA waiver as part of the settlement agreement and now must live with the result, namely, that there is no agreement as to the form. So long as the instrument contains a HIPAA waiver, which the instrument executed by [Louis] does, it is sufficient for purposes of the settlement agreement. . . . As the court recognized . . . [Louis] is free to tell his doctors whatever he wants. . . . This makes sense given the court's observation that despite requiring [Louis] to provide a HIPAA waiver and visitation authorization, [Louis] is free to protect himself against the abusive and threatening behavior exhibited by Steven after the settlement agreement was entered. [Louis] does not know and cannot foresee all of the health care providers that Steven may seek to contact, or facilities at which he may seek to visit [Louis]. Rather than [Louis] guessing or having to contact each of his health care providers (to the extent [Louis] knows who they are in advance), [Louis] set forth his concerns in the HIPAA waiver and visitation authorization so that

5

when Steven presents either instrument, [Louis] can be assured that the provider is made aware of [Louis's] concerns." (Some capitalization omitted.)

The court granted Steven's motion: "The information included in [Louis's] waiver makes the waiver ineffective because it contradicts [Louis's] authorization for release of his medical information. Although the court's order and the settlement agreement did not specify the exact language to be used, the inclusion of information that contradicts the [waiver] clearly does not comply with the order and the settlement agreement. As Steven acknowledges, the order and the settlement agreement do not bar [Louis] from communicating any information to health care professionals but including that information within the waiver would be inconsistent with the settlement agreement. [¶] [Louis's] concern that he cannot foresee all of the health care providers that Steven may seek to contact is minimal because [Louis] should be aware of most, if not all, health care providers that he has seen or will see. This concern does not warrant the execution of a waiver that would be inconsistent with the settlement agreement. Also, [Louis's] argument that Steven cannot challenge the waiver because he did not challenge the visitation authorization lacks merit. That is not an adequate basis for estoppel, and the court's order required the visitation authorization to be included . . . in the waiver, which [Louis] failed to do." (Some capitalization omitted.)

The court ordered Louis to execute a waiver that states verbatim: "I, Louis J. Alpinieri hereby authorize my health care providers to release the following information to my son, Steven L. Alpinieri ('Steven'): [¶] All health information pertaining to my medical history, mental or physical condition, and treatment received. [¶] This authorization shall apply to any health care providers, including physicians, nurses, and all other persons, who may

6

have provided, or are providing at the time such health or medical information is sought by Steven, any type of health or medical care to me. If I reside in a health care facility, Steven shall have the right to visit me in that health care facility, subject to any rules or procedures of the health care facility. [¶] This authorization may only be revoked by (1) a written agreement signed by Steven and me; or (2) a court order. [¶] Any person or entity may rely upon a photocopy, facsimile, or electronic version of this signed document."

Louis appeals from this probate court order.

DISCUSSION

Louis contends: "Despite the lack of any specificity regarding the form of the HIPAA waiver in the settlement agreement, the probate court erroneously read into the settlement agreement a prohibition against Louis informing his health care providers in writing about his concerns with Steven having his protected health information, while simultaneously asserting that Louis was free to *tell* 'his doctors whatever he wants.' . . . The settlement agreement (and HIPAA) do not preclude Louis from engaging in written communications with *his own* health care providers. In a similar manner, the settlement agreement does not limit Louis to orally 'telling' his wishes to his health care providers. Therefore, the court erred when it so limited Louis' ability to communicate with *his own* health care providers." (Some capitalization omitted.)

On a motion to enforce a settlement under section 664.6, the trial court's legal conclusions are not entitled to deference and will be subject to independent review. (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253.) We also apply a de novo review because we are reviewing a written instrument about which there is no conflicting extrinsic evidence. (*Parsons v.*

7

*Bristol Development  Co.* (1965) 62 Cal.2d 861, 865-866.)  We review the court's ruling, not its reasoning.  (*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 934.)

" 'The purpose of the law of contracts is to protect the reasonable expectations of the parties.'  [Citation.]  'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.'  [Citation.]  'The interpretation must be fair and reasonable, not leading to absurd conclusions.  [Citation.]'  [Citation.]  'The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable.' "  (*Citizens for Goleta Valley v. HT Santa Barbara* (2004) 117 Cal.App.4th 1073, 1076–1077.)

Louis's proposed HIPAA waiver was not effective.  Although Louis's waiver states the medical providers are authorized to share Louis's medical information with Steven, it also includes information undermining that grant of authorization.  It states Louis does not wish to provide the health care information to Steven, and it references their estrangement and their many years of litigation.  Louis's waiver includes unnecessary information about his previous belief he could revoke the HIPAA waiver for his safety, and the fact the probate court rejected that notion.  This waiver also states Louis does not "feel comfortable with Steven having access to [Louis's] protected health information."  Moreover, Louis's waiver includes a reference to the federal regulations implementing the HIPAA, setting forth circumstances in which a medical provider may elect not to release medical information to a designee.  Additionally, Louis's waiver states that it does not supersede any previous authority he might have given to a health care provider to restrict access to or disclosure of, his health and medical information.

8

Louis's proposed waiver contained extraneous material that undermined the parties' settlement agreement requiring him to provide a HIPAA waiver, which the parties intended to be effective. Louis acknowledges case law stating that "courts assume that each party to a contract is alert to, and able to protect, his or her own best interests. [Citations.] Therefore, courts will not rewrite contracts to relieve parties from bad deals nor make better deals for parties than they negotiated for themselves." (*Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 164.) As Louis agreed to provide an unconditional HIPPA waiver, the probate court could not rewrite their settlement agreement to include Louis's proposed conditions. " 'Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit. [Citations.] . . . Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' " (*Critzer v. Enos*, *supra,* 187 Cal.App.4th at p. 1252.)

Louis argues "the fundamental issue in this appeal" is whether the settlement agreement prohibits him from sharing his concerns about Steven accessing his protected medical information in the HIPAA waiver. Louis relies on the court's comments that he is free to separately communicate his reservations about the HIPAA waiver to his health care providers. But as stated, under our standard of review, we are not bound by the probate court's reasoning. We review its ruling. Nothing in the plain text of the settlement

9

agreement contemplates Louis elaborating on his concerns about Steven in the HIPAA waiver.

Louis does not argue with citation to the record or case law that the probate court's HIPAA waiver, with its specific language that more closely aligns with the parties' intent as set forth in their agreement, is inadequate or improper. Accordingly, he provides no reasoned basis to overturn the probate court's ruling. "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287.)

In light of our disposition of this case, we do not disturb the probate court's order regarding attorney fees and costs.

DISPOSITION

The order is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.