Filed 8/20/21 P. v. Benavidez CA2/1
Opinion on remand from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL GREGORY BENAVIDEZ,<br><br>    Defendant and Appellant. | B299027<br><br>(Los Angeles County Super. Ct. Nos. VA147076, VA148319) |
| In re<br><br>MICHAEL GREGORY BENAVIDEZ,<br><br>    on Habeas Corpus. | B310022<br><br>(Los Angeles County Super. Ct. Nos. VA147076, VA148319) |

APPEAL from judgments of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed in part; reversed in part; and remanded with directions.

ORIGINAL PROCEEDING; petition for writ of habeas corpus.  Petition denied as moot.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

**SUMMARY**

In Los Angeles Superior Court No. VA147076 (the 076 matter), a jury convicted Michael Gregory Benavidez of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)), possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)), and unlawful possession of ammunition (Pen. Code, § 29800, subd. (a)(1)) in March 2019.[1]  In April 2019 in Los Angeles Superior Court No. VA148319 (the 319 matter), Benavidez pleaded no contest to making criminal threats (§ 422, subd. (a)).  Benavidez admitted that he had one prior serious felony conviction (§§ 667, subd. (d), 1170.12, subd. (b)), and that he had served one prior prison term (§ 667.5, subd. (b)).

---

[1] Further unspecified statutory references are to the Penal Code.

Although Benavidez had a maximum combined exposure in the two cases of more than 24 years, the People and Benavidez agreed to an aggregate sentence of 10 years and four months for both cases. The trial court sentenced Benavidez consistent with the parties' agreement.

On appeal, Benavidez contended there was insufficient evidence to support his convictions in the 076 matter because no evidence exists that he was knowingly in possession of the handgun and ammunition found in the garage where he was living. In an opinion that has since been vacated, and as explained below, we disagreed with Benavidez's contention and affirmed the trial court's judgment in the 076 matter.

Regarding his sentence in the 319 matter, Benavidez contended that Senate Bill No. 136 (S.B. 136) requires us to strike the one-year enhancement imposed under section 667.5, subdivision (b) based on Benavidez's prior prison term. In our earlier opinion, we concluded that Benavidez had not filed a notice of appeal effective as to the 319 matter. On that basis, we concluded we were without jurisdiction to hear Benavidez's challenge to the judgment in the 319 matter and dismissed the appeal.

After we issued our opinion, Benavidez filed a petition for writ of habeas corpus in this court asking that we allow him to file a belated notice of appeal in the 319 matter or an amended notice of appeal referencing both matters. We summarily denied the petition for writ of habeas corpus and Benavidez petitioned the Supreme Court for review of that order. The Supreme Court granted Benavidez's petition for review, ordered this court to vacate its order denying the petition for writ of habeas corpus, and issue an order to show cause returnable in this court why the

3

relief Benavidez requested should not be granted. On its own motion, the Supreme Court also granted review in Benavidez's direct appeal, vacated this court's opinion, and transferred the matter back to this court with the instruction that the matter be reconsidered "in light of *Luz v. Lopes* (1960) 55 Cal.2d 54, 59; *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1248-1249; and *D'Avola v. Anderson* (1996) 47 Cal.App.4th 358."

On transfer from the Supreme Court, we vacated our order denying Benavidez's petition for writ of habeas corpus and issued an order to the Secretary of the California Department of Corrections and Rehabilitation to show cause why the relief Benavidez requested in his petition for writ of habeas corpus should not be granted. We also notified the parties that the petition for writ of habeas corpus would be considered concurrently with Benavidez's direct appeal.

Upon reconsideration of Benavidez's direct appeal, we agree with Benavidez's contention that the notice of appeal filed in the 076 matter is also effective as to the 319 matter. The parties agree that if Benavidez filed a timely notice of appeal in the 319 matter, the one-year enhancement imposed by the trial court on that sentence should be stricken. We will order the trial court to dismiss the prior prison term enhancement. Consistent with our understanding of *People v. Stamps* (2020) 9 Cal.5th 685 and cases that have considered it in the context of S.B. 136, we will remand the matter to the trial court and direct the trial court to strike the section 667.5, subdivision (b) enhancement and give the parties an opportunity to negotiate a new plea agreement. We will affirm the trial court's judgment in all other respects.

4

## BACKGROUND

### A. The 076 Matter—Methamphetamine, Firearms, and Ammunition

The Los Angeles County Sheriff's Department executed a search warrant on the garage of a duplex in Hawaiian Gardens at about 5:00 a.m. on February 21, 2018. Deputies escorted Benavidez and his girlfriend from the garage and eight other people from the duplex, which was separate from the garage. Benavidez had methamphetamine in his pocket when he was escorted from the garage.

The garage the deputies searched had a makeshift bed, clothing, and two televisions, some video equipment and a gaming system in it, and appeared as though it was being used as a residence.[2] Deputies also found a backpack that contained more methamphetamine. During their search of the garage, one of the deputies climbed onto a chair "exactly where it was in the room" and found, positioned on a rafter "about seven feet, eight feet off the ground," a .9 millimeter firearm loaded with live unfired ammunition and with a live unfired round in the firearm's chamber. The deputy testified that as he stood on the chair "exactly where it was in the room, the [firearm] handle was closest to [him]. So if [he] were to reach up, [the firearm] was perfectly within arm's reach." The deputy testified that if he stood on the chair and turned 180 degrees away from the firearm, "there was a plastic baggie" on another rafter that contained unfired ammunition.

---

[2] During an interview with deputies after his arrest, Benavidez stated that he had been living in the garage for approximately one to two weeks.

5

Both the firearm and the ammunition were "in plain sight" as the deputy stood on the chair. The deputy testified that if one were *not* standing on the chair, the firearm and ammunition on top of the rafters would "more than likely not" have been visible.

When interviewed, Benavidez acknowledged that the methamphetamine in his pocket was his and "that he uses meth." Benavidez initially denied that the firearm and methamphetamine found inside the garage were his. When asked if they belonged to his girlfriend, however, he replied that "they didn't belong to her, not to mess with her, that it belonged to him."

## B. The 319 Matter—Criminal Threats

On July 4, 2018, Benavidez threatened to kill someone visiting a neighboring apartment. During the interaction, Benavidez raised his shirt to reveal a firearm in his waistband.

## C. Procedural Background

The People filed a first amended information in the 076 matter and a third amended information in the 319 matter on March 6, 2019. In the 076 matter, the People charged Benavidez with one count of possession of methamphetamine while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)), one count of possession of a firearm by a convicted felon (§ 29800, subd. (a)(1)), and one count of possession of live ammunition while barred from having a firearm (§ 30305, subd. (a)(1)). The information also alleged a gang enhancement under section 186.22, subdivision (b)(1)(A), that Benavidez had been convicted of two prior strike offenses, that he had suffered a prior serious felony under section 667, subdivision (a)(1), and that he had served five prior prison terms under section 667.5, subdivision (b).

6

In the 319 matter, the People charged Benavidez with one count of making a criminal threat (§ 422, subd. (a)) and one count of violating civil rights (§ 422.6, subd. (a)).  The information also alleged a gang enhancement under section 186.22, subdivision (d), that Benavidez had committed a hate crime pursuant to section 422.75, subdivision (a), that he had personally used a firearm in the commission of the crime under section 12022.5, subdivision (a), that he had been convicted of one prior strike offense, that he had suffered a prior serious felony under section 667, subdivision (a)(1), and that he had served four prior prison terms under section 667.5, subdivision (b).

At the beginning of Benavidez's trial in the 076 matter, the parties agreed that the 319 matter would "be tried secondarily . . . ."  On March 12, 2019, the jury in the 076 matter convicted Benavidez of one count of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)), one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)), and one count of unlawful possession of ammunition (§ 30305, subd. (a)(1)).  For purposes of the 076 matter, Benavidez admitted that he had suffered a one-year prior conviction for purposes of section 667.5, subdivision (b), and had a prior serious felony conviction for purposes of section 667, subdivision (d).

On April 26, 2019, the 319 matter was transferred from another department of the Los Angeles Superior Court to the same department where the 076 matter was pending.  A minute order reflects that "[p]ursuant to defense counsel's request, the [319] matter is ordered transferred to [the department where the 076 matter was pending] for global disposition, forthwith."  On the record in the transferee department, the trial court explained

7

that the 319 matter was "transferred from [its original department] to handle along with the" 076 matter.

In the 319 matter, Benavidez pleaded no contest to a single count of making criminal threats under section 422, subdivision (a). Benavidez admitted again, this time for purposes of the 319 matter, that he had suffered a prior serious felony conviction under section 667, subdivision (d), and a one-year prior conviction for purposes of section 667, subdivision (b).

The trial court imposed Benavidez's sentence on each case according to the parties' agreement as follows: "As to case number VA147076, defendant having been convicted of multiple counts . . . the defendant agreed to a disposition posttrial on that case which was four years on count number 1, which is the principal count. That term is doubled pursuant to [section] 1170(a) through (d), [section] 667 (b) through (i) for eight years. [¶] Count number 3 on VA148319 that is a [section] 422(a) is eight months. That term is ordered doubled pursuant to [section] 1170(a) through (d), 667(b) through (i). In addition and consecutive thereto, the defendant having admitted to one of the [section] 667.5(b) priors, the total term of imprisonment adds a one-year enhancement for—one-year enhancement for a total on case VA148319 of two years, four months." The trial court continued: "As to count number 2 on VA147076 the court will sentence the defendant to an additional 16 months which is to run concurrent. Count number 3 of VA147076 the court will likewise sentence to an additional 16 months to run concurrent."

Benavidez filed a timely notice of appeal that referenced the 076 matter, but omitted any reference to the 319 matter.

8

### 1. Initial Appellate Opinion

We filed our opinion in Benavidez's direct appeal on December 29, 2020. In that opinion, we concluded that the evidence presented at Benavidez's trial was sufficient to sustain Benavidez's firearm-and ammunition-possession convictions. On that basis, we affirmed the trial court's judgment in the 076 matter.

In his briefing on the 319 matter, Benavidez had argued that his notice of appeal in the 076 matter constituted a constructive notice of appeal in the 319 matter under *In re Benoit* (1973) 10 Cal.3d 72. Alternatively, Benavidez asked us to view the 076 and 319 matters as a single matter for purposes of the notice of appeal, arguing that the two cases had been "consolidated for sentencing." We concluded that *Benoit* was inapposite. And nothing in the record suggested to us that the matters had been consolidated or otherwise deemed related, but rather that they were merely placed in the same department at Benavidez's counsel's request "for global disposition." We therefore rejected Benavidez's arguments and dismissed the appeal as it related to the 319 matter.

### 2. Petition for Writ of Habeas Corpus

On January 25, 2021, Benavidez filed in this court a petition for writ of habeas corpus permitting him to belatedly file a new or amended notice of appeal in both the 076 and 319 matters. We summarily denied the petition for writ of habeas corpus.

### 3. Review and Transfer from the Supreme Court

Benavidez petitioned the Supreme Court for review of the order denying his petition for writ of habeas corpus. On March 30, 2021, the Supreme Court issued two orders related to the

9

instant matters. The Supreme Court granted Benavidez's petition seeking review of the summary denial of his petition for writ of habeas corpus and transferred it to this court with the following instruction: "The matter is transferred to the Court of Appeal, Second Appellate District, Division One. That court is ordered to vacate its summary denial dated February 11, 2021, and is further ordered to issue an order to show cause, returnable before that court. The Secretary of the California Department of Corrections and Rehabilitation is to be ordered to show cause why the relief prayed for should not be granted." (*In re Michael Gregory Benavidez* (Mar. 30, 2021, S267176).)

The same day it issued its order granting Benavidez's petition for review in the habeas matter, the Supreme Court also issued the following order in Benavidez's direct appeal: "Review is ordered on the court's own motion. [¶] The decision of the Second District Court of Appeal, Division One, is vacated, and the matter is transferred to that court for reconsideration in light of *Luz v. Lopes* (1960) 55 Cal.2d 54, 59; *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1248-1249; and *D'Avola v. Anderson* (1996) 47 Cal.App.4th 358." (*People v. Benavidez* (Mar. 30, 2021, S267908).)

On transfer from the Supreme Court, we issued an order on April 15, 2021 vacating our order denying Benavidez's petition for writ of habeas corpus. We ordered the Secretary of the California Department of Corrections and Rehabilitation to show cause why we should not grant the relief Benavidez requested in his petition for writ of habeas corpus. And we ordered that the petition for writ of habeas corpus would be considered concurrently with our reconsideration of Benavidez's direct appeal.

10

## DISCUSSION

### 1. The 076 Matter

Benavidez contends that the evidence presented at trial was insufficient to support a conclusion that he had knowledge of or control over the firearm and ammunition deputies found in the garage where Benavidez was living on February 21, 2018. Benavidez explains (and the People do not dispute) that each of the crimes for which he was convicted in the 076 matter requires that the defendant have knowledge of, possess of, control over, or intent to possess the hidden firearm or ammunition. (See *People v. Bay* (2019) 40 Cal.App.5th 126, 131-132 (*Bay*).) Benavidez argues, however, that the only evidence in the record that he had knowledge of, possession of, control over, or intent to possess the firearm and ammunition found in his living space was his confession to deputies after his arrest. Benavidez argues that under the corpus delicti rule, the People cannot rely exclusively on his confession to establish Benavidez's knowledge, possession, control, or intent.

When an appellant challenges the sufficiency of the evidence to support a criminal conviction, "we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Nevertheless, "California, like most American jurisdictions . . . adhere[s] to the rule that . . . the . . . body of the crime[ ] cannot be proved by *exclusive* reliance on

11

the defendant's extrajudicial statements." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1165 (*Alvarez*).) "Thus, . . . the corpus delicti rule requires that a conviction be supported by some evidence, which need only constitute ' "a slight or prima facie showing" ' [citation], but must be in addition to and beyond the defendant's untested inculpatory extrajudicial statements [citation], that '*someone* committed a crime.' [Citation.]" (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1428, original italics.) "The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*Alvarez*, at p. 1171.)

"The firearm- and ammunition-possession offenses prohibit a felon from 'possess[ing]' or having 'under custody or control' the given item [citations], and they are general-intent crimes that require knowing possession of the prohibited item. [Citations.] Possession may be actual or constructive. ' "A defendant has actual possession when the weapon is in his [or her] immediate possession or control," ' i.e., when he or she is actually holding or touching it. [Citations.] "To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person.' [Citations.] Although a defendant may share possession with other people, 'mere proximity' or opportunity to access the contraband, 'standing alone, is not sufficient evidence of possession.' " (*Bay*, *supra*, 40 Cal.App.5th at pp. 131-132.)

The "necessary quantum of independent evidence" to satisfy the corpus delicti rule (*Alvarez*, *supra*, 27 Cal.4th at p. 1171) is present here. A deputy stood on a chair "exactly where it was in the room" to access the firearm, which was loaded and had

12

a round in the chamber.  The deputy testified that "if [he] were to reach up, [the firearm] was perfectly within arm's reach."  The jury could have inferred from that testimony that the garage's occupants knew about the weapon and had constructive control over it.  The position of the chair in the space coupled with the location of the loaded handgun and live ammunition supports a reasonable inference of more than mere proximity or opportunity.  Rather, the scenario allows the inference that the occupants of the garage placed the weapon, ammunition, and means of access where they did so that the weapon and ammunition could be readily accessed and used.  The evidence presented at trial is sufficient to sustain Benavidez's firearm- and ammunition-possession convictions.

## 2. The 319 Matter

### a. Notice of Appeal

Benavidez filed a notice of appeal in the 076 matter, but no notice of appeal in or referencing the 319 matter.

"Under statutory law, a defendant may generally take an appeal from a judgment of conviction."  (*People v. Mendez* (1999) 19 Cal.4th 1084, 1094 (*Mendez*).)  "Under decisional law, by contrast, a defendant generally may *not* take an appeal from a judgment of conviction entered on a plea of guilty or . . . nolo contendere, except on grounds going to the legality of the proceedings, including the validity of his plea."  (*Ibid.*)

"A timely notice of appeal, as a general matter, is 'essential to appellate jurisdiction.' "  (*Mendez, supra*, 19 Cal.4th at p. 1094.)  "An untimely notice of appeal is 'wholly ineffectual:  The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion.' "  (*Ibid.*)

13

When we initially considered Benavidez's appeal, we viewed the 076 and 319 matters as unrelated, and as having been handled entirely separately. "The record contains no order consolidating the matters for any purpose," we observed. "There is a minute order transferring the 319 matter to the same department as the 076 matter 'for global disposition.' But the record does not demonstrate that the cases were ever consolidated or otherwise deemed related. Neither were they substantively related. One case dealt with a set of drug, firearm, and ammunition charges based on a search of Benavidez's home on an early morning in February 2018. The other dealt with an unrelated criminal threat Benavidez made in July 2018." (*People v. Benavidez* (Dec. 29, 2020, B299027) [nonpub. opn.] at pp. 9-10, review granted and matter transferred Mar. 30, 2021, S267908.) We continued: "While the length of Benavidez's sentence was negotiated globally, the trial court treated the cases as separate matters when it entered judgment; the trial court carefully delineated case numbers, counts, and application of enhancements when it sentenced Benavidez in each of the matters." (*Id.* at p. 10.) It was also significant to us that no basis for the appeal from the judgment after Benavidez's plea agreement in the 319 matter existed until the Legislature passed and the Governor signed S.B. 136 after the time for filing a notice of appeal in the 319 matter would have already passed.

It appears that the parties agree that the 076 matter and the 319 matter were inextricably intertwined because the two matters were sentenced globally as part of a plea agreement. In his declaration attached to his petition for writ of habeas corpus, Benavidez informed this court that he believed that "[i]t would not make any sense to file a Notice of Appeal only in [the 076

14

matter] because, if those convictions were reversed on appeal, then the plea agreement in [the 319 matter] would need to be renegotiated as well." While the People reach a different logical conclusion, their return to the petition for writ of habeas corpus suggests that they agree that the matters are inextricably intertwined because the sentences in both matters were part of the same plea agreement: "If petitioner obtained a reversal of his convictions in the 076 matter, he would, ipso facto, have to be resentenced in the 319 matter. . . . *The count of conviction in the 319 matter* (count 3) *was a subordinate count*, on which petitioner received a sentence of one-third the mid-term, doubled (16 months). . . . If successful on the appeal in the 076 matter, and the People were unable to retry the case, *petitioner would have to be resentenced on count 3 in the 319 matter as the new principal term*." (Italics added.)

We overlooked the effect of the global sentencing agreement on our initial review. We correct that oversight here.

In *Luz v. Lopes* (1960) 55 Cal.2d 54, 59, the Supreme Court explained that "notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." Our colleagues in Division Five have found a notice of appeal sufficient where the appellant put the wrong case number on the notice of appeal as long as the court can determine what is being appealed and there is no evidence that the respondent was misled or prejudiced. (*D'Avola v. Anderson* (1996) 47 Cal.App.4th 358, 362.) And in *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1249, the notice of appeal was from an order that "contained the wrong caption and was filed in a related case in which no motion was

15

pending at the time." Still, it was " 'reasonably clear what [the appellants were] trying to appeal from' [citation], and the [respondent was] neither prejudiced nor misled from [a] liberal construction of the notice of appeal to embrace" the correct order.

On reconsideration, we agree with the parties that the 076 and 319 matters are sufficiently related through the global agreement that resulted in the sentences in each case such that if a renegotiated plea agreement were required in one of the matters, it would affect the entire agreement as to both matters. It appears that both of the parties viewed the matters as sufficiently related to be considered together on appeal. And the People have articulated no prejudice that would result from consideration of Benavidez's arguments as to both matters. On that basis, we will deem the notice of appeal in the 076 matter effective as to both matters. Because Benavidez's petition for writ of habeas corpus seeks relief in the form of permission to file a late notice of appeal in the 319 matter, it is moot.[3] (See *In re Miranda* (2011) 191 Cal.App.4th 757, 762.)

---

[3] Benavidez has moved to strike portions of the People's return to the petition for writ of habeas corpus based on allegations that the People's return discloses privileged communications between Benavidez and his counsel. We view the petition for writ of habeas corpus as moot on grounds unrelated to the allegedly improperly disclosed material and we have not considered the portions of the People's return that Benavidez considers objectionable in our determination of this matter. Based on our conclusion that Benavidez's petition for a writ of habeas corpus is moot, we also deny as moot Benavidez's motion to strike portions of the People's return.

### b. Merits

In their initial briefing here, the parties agreed that Benavidez was entitled to have the enhancement imposed under section 667.5, subdivision (b) stricken from his sentence. We agree.

"Effective January 1, 2020, [S.B.] 136 amended section 667.5, subdivision (b) to eliminate the one-year prior prison term enhancement unless the prior term was served for a sexually violent offense. [Citations.] This new law applies to nonfinal judgments pending on appeal." (*People v. Choi* (2021) 59 Cal.App.5th 753, 769 (*Choi*).) Because we have deemed Benavidez's notice of appeal in the 076 matter effective as to the 319 matter, this applies to Benavidez's sentence in the 319 matter, and on remand we will order to the trial court to strike the one-year enhancement imposed under section 667.5, subdivision (b).

### c. Proper Disposition on Remand

The parties disagree as to the proper disposition. Benavidez contends that the matter should not be remanded to the trial court for resentencing based on what the People contend amounts to a modification of Benavidez's plea agreement. The People contend that the matter *must* be remanded to the trial court because striking the one-year enhancement invalidates part of the negotiated sentence; "the remedy," according to the People, "is to remand to the trial court to permit the district attorney to either accept a reduction of the sentence or to withdraw from the plea agreement."

Both sides base their argument on the Supreme Court's opinion *People v. Stamps, supra*, 9 Cal.5th 685 (*Stamps*). In *Stamps*, "pursuant to negotiation, defendant pled to one first

17

degree burglary and admitted one serious felony conviction in exchange for a nine-year prison sentence, based on the low term for burglary (two years), doubled under the Three Strikes law [citation], plus five years for the serious felony enhancement. All remaining counts and allegations were dismissed on motion of the district attorney as part of the plea agreement." (*Id.* at p. 693.) S.B. 1393 became effective on January 1, 2019, and gave trial courts discretion to strike the previously-mandatory five-year serious felony enhancement. (*Stamps*, at pp. 693, 698.)

The defendant in *Stamps* "contend[ed] the proper remedy is to remand to the trial court to consider striking the serious felony enhancement while otherwise maintaining the plea agreement intact." (*Stamps*, *supra*, 9 Cal.5th at p. 700.) The Supreme Court, relying on the distinction between a "convict[ion] of a crime with an enhancing prior as a result of trial or an open plea of guilty as charged" and a plea agreement resulting in "a specific prison term," rejected the defendant's argument. (*Ibid.*) "If defendant stood convicted of a crime with an enhancing prior as a result of trial or an open plea of guilty as charged," the Supreme Court explained, "his case could be remanded for the court to reconsider its sentence in light of its newly conferred authority to strike the enhancement. This case is procedurally different because both parties entered a plea agreement for a specific prison term." (*Ibid.*)

Benavidez argues that this distinction is irrelevant here; because the trial court has no discretion in whether to strike the one-year section 667.5, subdivision (b) enhancement, Benavidez

18

contends that the trial court should have no further involvement in the matter.[4]

The Supreme Court, however, extensively explored the nature of plea agreements and the trial court's alternatives when presented with a plea agreement. Because S.B. 1393 gave trial courts authority under section 1385 that they previously did not have, the Supreme Court wrote about the issue in the context of section 1385: "Even when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention of a plea bargain for a specified term. Section 1192.5 allows a plea to 'specify the punishment' and 'the exercise by the court thereafter of other powers legally available to it,' and '[w]here the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and *the court may not proceed as to the plea other than as specified in the plea.*' " (*Stamps, supra*, 9 Cal.5th at p. 700, italics added by Supreme Court.) "Even applying section 1385 as

_____

[4] This argument appears to run counter to our Division Eight colleagues' conclusion in *Choi, supra*, 59 Cal.App.5th 753. In *Choi*, our colleagues in Division Eight ordered the trial court to strike two one-year enhancements that had been imposed as part of a seven-year sentence after a jury trial. Division Eight explained that the trial court had "not impose[d] the maximum sentence." (*Id.* at p. 770.) Instead, the trial court had exercised discretion and made sentencing choices to arrive at a sentence, and could thus "reevaluate its sentencing decisions in light of the changed circumstances." (*Ibid.*, citing *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

amended," the Supreme Court said, "long-standing law limits the court's unilateral authority to strike an enhancement yet maintain other provisions of the plea bargain." (*Id.* at p. 701.) The Supreme Court explained that the defendant must not only demonstrate the retroactivity of an ameliorative statute, but also "that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it . . . ." (*Ibid.*)  In the case of S.B. 1393, the Supreme Court concluded that the legislation "did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Stamps*, at p. 702.)

The courts of appeal are split on the question in the context of S.B. 136, and the issue is pending before the Supreme Court. (*People v. Hernandez* (2020) 55 Cal.App.5th 942, review granted Jan. 27, 2021, S265739 (*Hernandez*).)  The *Hernandez* court concluded that to follow *Stamps*, it could not "unilaterally modify the plea agreement" by striking the section 667.5, subdivision (b) enhancement and "keeping the remainder of the bargain intact . . . ." (*Hernandez*, at p. 959.)  That court concluded that it must remand the case to the trial court to allow the People to decide whether to withdraw from the plea agreement. (*Ibid.*)

Given the Supreme Court's reliance in *Stamps* on the significance of the trial court's and parties' obligations vis-à-vis sentencing as a result of a plea agreement, we will follow those cases that have remanded to allow the People to determine whether to withdraw from or otherwise renegotiate the plea agreement.  The majority of our colleagues who have considered

20

the issue appear to be in accord.[5]  (Compare *Hernandez, supra*, 55 Cal.App.5th at p. 960; *People v. Ruggerio* (2021) 65 Cal.App.5th 1126, ___ (*Ruggerio*); *People v. Griffin, supra*, 57 Cal.App.5th at p. 1099; *People v. Joaquin* (2020) 58 Cal.App.5th 173, ___, review granted Feb. 24, 2021, S266594; and *People v. Houle* (2021) 64 Cal.App.5th 395, 403, review granted July 28, 2021, S269337; with *People v. France* (2020) 58 Cal.App.5th 714, 730, review granted Feb. 24, 2021, S266771; *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1079, review granted June 30, 2021, S268787; and *People v. Andahl* (2021) 62 Cal.App.5th 203, 210-211, review granted June 16, 2021, S268336.)

The matter will be remanded to the trial court to strike the one-year enhancement imposed under section 667.5, subdivision (b).  On remand, prosecutors may withdraw from the plea agreement, the trial court may withdraw its approval of the plea agreement, or the parties and the trial court may agree to modify the bargain to reflect the downward departure in the sentence and the trial court may approve the new plea.  "However the new plea is reached (if at all), it may not include a sentence longer

---

[5] The court in *People v. Matthews* (2020) 47 Cal.App.5th 857, 869, reached the opposite conclusion.  But that court reached that conclusion before the Supreme Court issued its opinion in *Stamps, supra*, 9 Cal.5th 685.  We agree with our colleagues in *People v. Griffin* (2020) 57 Cal.App.5th 1088, 1093, review granted Feb. 17, 2021, S266521, that "*Matthews'* reasoning is no longer sustainable in light of" *Stamps*.  The court in *People v. Petri* (2020) 45 Cal.App.5th 82, 94, also issued before *Stamps*, reached a similar result, but the *Petri* opinion does not analyze the question in any depth.

than the . . . term" in the original plea.  (*Ruggerio, supra,* 65 Cal.App.5th at p. ____.)

## DISPOSITION

The petition for writ of habeas corpus is denied as moot and the order to show cause is discharged.  The matter is remanded to the trial court with directions to strike the one-year sentence enhancement from the sentence imposed in the 319 matter and proceed in a manner consistent with this opinion.  The judgments are affirmed in all other respects.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.