Filed 8/20/21  Estate of Reyes CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| Estate of JESUS A. REYES, Deceased. | C089180 |
| MARINA LUNA DE REYES, as Administrator, etc., Petitioner and Respondent, v. MICHAEL REYES et al., Objectors and Appellants. | (Super. Ct. No. 34-2015-00175128-PR-LA-FRC) |

Michael Reyes and Rebecca Zuniga appeal from the trial court's order enforcing a settlement with Marina Reyes under Code of Civil Procedure section 664.6.[1]  As we explain, for several reasons the order must be reversed.

---

[1] All undesignated statutory references are to the Code of Civil Procedure.  To avoid confusion and with no disrespect or informality intended, we will refer to all parties by their first names.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2017, Marina, as administrator of the estate of Jesus Reyes, filed an account and petition for final distribution in the estate of Jesus A. Reyes. On November 17, 2017, Michael and Rebecca filed objections. On May 22 and May 23, 2018, the court held a bench trial on the objections. On the second day of trial, at the end of the morning session, the court confirmed with counsel for Marina that she would seek sanctions for an accounting contest in bad faith. The court confirmed with counsel for Michael and Rebecca that they were previously unaware that Marina would ask for sanctions. After the lunch recess, all counsel requested a further recess to confer. Counsel informed the clerk that counsel had reached a settlement. The trial court met with counsel in chambers to discuss the proposed settlement.

On the record, the court announced its understanding of the settlement that had been reached. "The resolution is that the administrator, Marina, is going to buy out Rebecca and Michael's interest, and she is going to do so by writing each one of them a check for $32,500. The payment is going to be made on or before June 14th, 2018.

"In exchange for that payment, both objectors, meaning Rebecca and Michael, are going to waive all objections to the accounting, so all objections that they have filed in their respective November 16, 2017 [*sic*], objections will be waived.

"Rebecca and Michael are agreeing to sign any document necessary to accomplish this resolution, including any assignment of a beneficial interest that is required. . . . [¶] . . . [¶]

"On June 14th at 11:00 A.M., Michael and Rebecca will be allowed to pick up personal property that's been previously identified and located in the garage, and that's the garage at the F Street property."

The court continued: "Counsel for Marina is going to submit an order reflecting this agreement by May 30th, which is one week from today. All parties are going to pay their own attorney's fees and court costs."

2

The court accepted counsel for Marina's clarification regarding the assignment of beneficial interests "that [Rebecca and Michael] are selling their interest in the estate, both on their behalf and on behalf of their heirs . . . ." Counsel for Marina and for Michael agreed the assignment should be notarized. Consulting with the court clerk, Marina's counsel also suggested that the court reporter's fees for two days of trial be split three ways.

The court placed Rebecca and Michael under oath and received confirmation from each of them that: (1) they understood the court's explanation of the settlement; (2) they were represented by counsel; (3) they had the opportunity to consult with counsel about the settlement; (4) counsel answered any questions they had; (5) they were asking the court to enforce the settlement; and (6) they were not taking any medications that affected their ability to think clearly. The court also received confirmation from Michael that he was asking the court to accept the settlement and was not confused about the terms of the settlement. To that last question from the court, Michael also responded, "I'm okay with it."

At the conclusion of this inquiry, the court said: "One thing I didn't add is, the Court is going to retain jurisdiction under Code of Civil Procedure 664.6. That means I have the power to make sure that this settlement agreement is fulfilled by all the parties, and I can exert any power the Court needs to make sure that the parties comply with the settlement. [¶] Does anyone have a problem with that?"

Counsel for the three parties each said, "No, Your Honor."

Notably missing from this hearing were (1) a colloquy with Marina similar to the colloquy with Michael and Rebecca regarding the terms of the settlement, and (2) verbal agreement by Marina, Michael and Rebecca to the trial court's announcement that it was retaining jurisdiction to ensure compliance with the settlement under section 664.6.

The record on appeal does not include any reference to an order reflecting the settlement that counsel for Marina was directed to submit by May 30, 2018.

3

Rather, on December 11, 2018, Marina filed a motion under section 664.6 (1) to enforce the oral settlement, (2) to appoint the court clerk as "elisor" to sign a written settlement agreement and assignment on behalf of Michael,[2] (3) to deduct attorney fees and costs from the $32,500 payment to Michael, (4) to modify the settlement agreement to order Rebecca to pick up the personal property on her own and Michael's behalf and execute a receipt for the property upon collection, and Marina to file the receipt with the court thereby discharging any liability to Michael and Rebecca for conveyance of the property, and (5) to confirm Marina's petition for final distribution.

The motion stated that the terms of the settlement were put on the record (attaching a transcript excerpt) and quoted the portion of the transcript regarding the court's retention of jurisdiction. The motion also quoted the "voir dire" of Michael and stated that Rebecca had complied with the terms of the settlement by signing an attached settlement agreement and assignment of interest and cashing the check for $32,500. As to Michael, the motion stated that he was "non-compliant and obstinate in his refusal to execute the documents necessary to give force and effect to the Settlement." Marina argued that the "parties entered into a Settlement Agreement, entered orally before the Court . . . . Parties agreed to settle all claims. Additionally, all Parties, agreed, on the record, that the Settlement Agreement could be enforced under California Code of Civil Procedure §664.6."

---

[2] "[A]n elisor is a person appointed by the court to perform functions like the execution of a deed or document. [Citation.] A court typically appoints an elisor to sign documents on behalf of a recalcitrant party in order to effectuate its judgments or orders, where a party refuses to execute such documents. [Citation.]" (*Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020.) Courts use elisors to exercise their inherent power under section 128, subdivision (a)(4), to compel obedience to their judgments and orders, including an order under section 664.6 to execute documents pursuant to the terms of a settlement agreement. (*Blueberry, supra*, at p. 1021.)

4

The notice of motion stated that the motion was brought under section 664.6, summarized as follows: "The instant motion is based on the grounds that [Michael] agreed during trial, in front of [the trial court], to settlement, and to execute written documents in support of same. When written documents were drafted and sent to all parties and their counsel, only [Rebecca] signed, and [Michael] has been avoiding adhering to the agreement and openly defying the Court."

Neither Michael nor Rebecca filed an opposition to the motion.

The motion noticed a hearing for January 4, 2019. On January 2, 2019, per notice from the court, a "Status Conference" in this action was continued to January 9, 2019.

On January 9, 2019, the court conducted a hearing on the motion. The court stated at the outset its intention to grant the motion: "The Court voir dire'd all parties with respect to the settlement, with respect to the deadlines, with respect to the responsibilities in taking care of the settlement. We had deadlines. The parties knew what they had to do, they knew what they had to sign, and my understanding is that Rebecca Zuniga complied with the settlement terms. She signed the settlement agreement, which was Exhibit B, provided to the Court. She executed an assignment of interest to Marina for $32,500 which was specifically mentioned in the settlement.

"My understanding is that Michael Reyes did not in a timely manner sign the settlement agreement, he did not pick up personal property that was supposed to be picked up by June 14th, and he did not sign the assignment."

After counsel for Marina confirmed that he still did not have Michael's signatures, the court said: "Based upon the noncompliance with the settlement and the Court's reservation of jurisdiction to enforce each and every term of the settlement, counsel for Marina has brought this matter back to the Court for an enforcement of the judgment, and right now I am inclined to do that. I am inclined to at this point appoint the Clerk of the Court to sign for [Michael], sign the settlement agreement, appoint the Clerk of the Court

5

to sign the assignment of interest because that wasn't done, and at this point I am inclined to also grant attorney's fees and costs."

Counsel for Michael declined the court's invitation to respond but said that, against his advice, Michael wanted to make a statement. Michael said: "First off, the written agreement did not conform to the oral agreement. It was a nine-page document, a lot of information -- a lot of conditions that he wanted me to agree to, and I feel that these conditions sort of have restrictions on my freedom. When I looked at the agreement, I said I am not going to be consenting to these conditions, and that's why the agreement was not signed."

Michael then argued that he did not breach the oral agreement because he did not receive the property or payment by June 14. He further argued that "[p]resenting a revised contract amounts to nothing more than making an offer and does not bind the other party until it is accepted." He concluded: "So my point is that this settlement agreement is a contract and must follow the laws of contract law, so all contracts specify a performance and a date by which that performance must be done, and you have to look at the language in the contract itself. You can't make interpretations of what you think it is or what it might be or you think the dates are. That's why a contract should be written, so both sides have a chance to look at it and review it to make certain they are making a good decision. I think oral contracts are a horrible thing to do when it has a lot of detail. People can't remember those things. You are going to have bickering over what was said and what wasn't said, and then you have a written contract that gets written up and put all these things in there that's not in the oral agreement, why are you coming with this and telling me I have to go sign the thing?"

In response to the court's query, Michael's counsel said he did not want to be heard as to the proposed order submitted by Marina, "[e]xcept as to the issues my client mentioned . . . ." The court responded: "I have considered statements made by your client. I don't find that they have much merit."

6

Rebecca also made a statement about the modification to the agreement, also against advice of counsel: "I did everything that they requested. Right? I signed it. I made various scheduled appointments to pick up the items, and each time he cancelled it, and I think he should have released it to me a long time ago. There was no condition in the contract that said that if someone didn't sign or someone else didn't sign that I wasn't going to get the items. They said as long as I signed and as long as they were provided the money, I would get everything. That was it. They didn't do that."

Marina's counsel responded that both checks were prepared, Rebecca received the check and changes were made to the written agreement based on requests from Rebecca and her counsel. On the specified day, Marina's counsel came to Sacramento to transfer the property but Michael had not signed the effectuating documents.

Assured by the court that she would get the property, which Marina did not want, Rebecca said, "But you want it based on me taking responsibility for it so that she doesn't get sued by my brother, which is kind of ridiculous because it already said in the contract 'and/or.' He could have gave [*sic*] it to me a long time ago. There was a time limit. He didn't abide by the limit, either." Rebecca also accused Marina's counsel of falsely stating that she had cashed the check. Rebecca asked that the contract be rescinded because of the breaches she claimed.

The court ruled that it would enforce the agreement and "amend the order to state that the property is to be picked up by February 15th, 2019. If the property is not picked up by that date, then Marina can dispose of the property as she wishes. That will be the order."

On January 9, 2019, the court signed the form of order submitted by Marina with this handwritten amendment. The court set a hearing on Marina's petition for final distribution for March 22, 2019.

On January 15, 2019, Marina filed a notice of entry of order.

7

On March 13, 2019, Michael and Rebecca appealed.[3]

## DISCUSSION

*Appealability*

The trial court entered an order on Marina's motion under section 664.6 but not a judgment. However, the effect of the order was to finally determine the rights of the parties regarding settlement and therefore is appealable. (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1250-1252 (*Critzer*); see also *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183 (*Hines*).)

*Standard of Review*

"The trial court's factual findings on a motion to enforce settlement pursuant to section 664.6 are subject to limited appellate review and will not be disturbed if supported by substantial evidence. [Citation.] Where, as here, the central issue on appeal involves the construction and application of a statute, the court conducts an independent review of the trial court's ruling. [Citation.]" (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162 (*Saunders*).)

*The Parties' Consent to the Oral or Written Settlement Agreement*

Michael argues "[t]he record does not show that, when the proposed settlement was recited orally in court on May 23, 2018, [Marina] personally gave her consent." Likewise, "[Marina] herself did not sign the would-be written settlement agreement, nor did her attorney, nor did [Michael]."

Section 664.6, subdivision (a), provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the

---

[3] Michael and Rebecca, both in pro. per., filed separate appeals but only Michael submitted opening and reply briefs and an appendix in lieu of clerk's transcript. Rebecca joined in Michael's opening brief (Cal. Rules of Court, rule 8.200(a)(5)) and relies on Michael's appendix. (*Id.*, rule 8.147(a)(1).)

court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

To enforce an oral settlement under section 664.6, the parties themselves, not their attorneys, must orally agree to the settlement. (*Johnson v. Department of Corrections* (1995) 38 Cal.App.4th 1700, 1707-1708; *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 716 (*Murphy*); *Critzer, supra*, 187 Cal.App.4th at pp. 1254-1258; see also *Levy v. Superior Court* (1995) 10 Cal.4th 578, 586.)

Similarly, to enforce a written settlement agreement under section 664.6, the parties involved themselves must sign the agreement. (*Saunders, supra*, 55 Cal.App.4th at p. 1163; *Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 305 (*Harris*) [§ 664.6's "requirement of a 'writing signed by the parties' must be read to apply to all parties bringing the section 664.6 motion and against whom the motion is directed"]; see also *Critzer, supra*, 187 Cal.App.4th at pp. 1256-1257; *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1119 (*Gauss*).)

Under these principles, there was no settlement agreement enforceable under section 664.6 because Marina did not consent orally or in writing to the settlement and Michael did sign the written settlement agreement.

Marina's response is that she "has signed the formal written agreement," an assertion not followed by a citation to record. We disregard unsupported factual assertions. (*Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 788 (*Niles*); *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267.) Moreover, Marina submitted the written settlement agreement unsigned by either Marina or her attorney as an exhibit in support of her section 664.6 motion. It is difficult to conceive of a reason why Marina would contend she had signed the written agreement but then offer as an exhibit to her motion a copy of the written agreement without her

9

signature. In any event, Michael did not sign the written agreement and therefore that agreement and its particular terms are not enforceable against him. (*Saunders, supra*, 55 Cal.App.4th at p. 1163.)

As to the oral agreement, Marina claims that she does not speak English and her attorney acted as her interpreter, in an attempt to explain the complete absence of any statement by her in the transcript of the proceedings where the terms of the oral agreement were recited by the court.[4] Marina's record citation for this assertion is her lawyer's waiver of an interpreter on the morning of the second day of trial when interpreters from the court's interpreters office were not available: "MR. BRODERICK-VILLA: On behalf of my client, I would waive the interpreter because I would just as soon the trial proceed. [¶] THE COURT: All right. That's fine." There is nothing in the record indicating that Marina's lawyer held himself out as an interpreter, was qualified to act as an interpreter, or was recognized by the court and the parties as acting in the capacity of interpreter for Marina.[5] Further, when Marina testified on the first day of trial assisted by an interpreter, her answers were set forth in the transcript. If Marina consented to the oral settlement on the second day of trial assisted by her attorney acting as interpreter, her answers to the court's voir dire—like those of Michael and Rebecca— would appear in the transcript. To the contrary, the transcript does not even indicate

---

[4] Marina asserts that Michael and Rebecca "concede" in their opening brief that the terms of the settlement were stated by her counsel at that proceeding. In fact, the terms were stated by the court, with minor clarifications by counsel for Marina and Michael accepted by the court. Even if Marina's lawyer had recited the terms of the settlement, it would not be enforceable without a statement on the record by the parties that they consented to the settlement. (*Critzer, supra*, 187 Cal.App.4th at p. 1257.)

[5] Marina asserts her "attorney is fluent in the Spanish language, and has interpreted in court in other counties for clients and non-clients alike." This is another assertion unsupported by citation to the record, which we disregard. (*Niles, supra*, 161 Cal.App.4th at p. 788.)

10

whether Marina was present, let alone set forth her affirmative consent to the oral settlement agreement.[6]

Marina also cites *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, where the court held that a settlement agreement is enforceable under section 664.6 if some parties orally agree and others sign a written agreement with the same material terms. (*Elyaoudayan, supra*, at p. 1432 ["Here, the settlement existed in two forms, oral and written. They both contained the same material terms. All parties agreed to the settlement in one form or the other or both. Accordingly, we affirm the trial court's enforcement of the settlement under section 664.6"].) Marina argues, "even if it were found that [she] could not give oral consent under CCP § 664.6 through an interpreter (who was also her attorney), it is unquestioned that [she] later the signed the written version containing the same material terms." On the record before this court, Marina's consent is equally absent as to the oral agreement and the written agreement.

Marina also attempts to excuse her noncompliance with section 664.6 by arguing that Michael and Rebecca are estopped from challenging the settlement agreement, because they acquiesced to the oral agreement and benefitted from the agreement by interrupting the trial and delaying the proceedings. Marina cites no case applying estoppel principles to avoid the requirements of section 664.6 and we decline to do so. Case law has "recognized no exceptions to the rule that litigants themselves must sign a settlement for it to be enforceable *under section 664.6*." (*Gauss, supra*, 103 Cal.App.4th at p. 1119.) Moreover, estoppel is a contract theory inapplicable in a statutory

---

[6] At the hearing on the motion to enforce the settlement, the trial court said it "voir dire'd all parties with respect to the settlement . . . ." However, no colloquy between the court and Marina regarding consent to the settlement appears in the transcript and the court's minute order states: "Michael Reyes and Rebecca Zuniga were then sworn by the clerk and both stated their agreement to the above settlement on the record following questioning by the Court."

proceeding under section 664.6. (See *Murphy, supra*, 42 Cal.App.4th at p. 716.) Marina cannot enforce a settlement under section 664.6 without complying with its requirements. (See *Harris, supra*, 74 Cal.App.4th at p. 304.)

*The Parties' Consent to the Court Retaining Jurisdiction*

As another bar to enforcement of the settlement, Michael contends the trial court erroneously retained jurisdiction under section 664.6 because the parties did not personally agree to it.

Section 664.6, subdivision (a), provides that "[i]f requested by *the parties*, the trial court may retain jurisdiction over the parties to enforce [a] settlement until performance in full of the terms of the settlement." (Italics added.) Case law interpreting section 664.6 requires that the parties personally, not their lawyers, consent to the trial court retaining jurisdiction under section 664.6. "[A] request that jurisdiction be retained until the settlement has been fully performed must be made either in a writing signed by the parties themselves, or orally before the court by the parties themselves, not by their attorneys of record, their spouses, or other such agents." (*Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 440 (*Wackeen*); see also *Hagan Engineering, Inc. v. Mills* (2003) 115 Cal.App.4th 1004, 1010-1011; *Critzer, supra*, 187 Cal.App.4th at p. 1254; *Mesa RHF Partners, L.P. v. City of Los Angeles* (2019) 33 Cal.App.5th 913, 917 (*Mesa*).)

The transcript where the court announced at the close of the proceeding its intention to retain jurisdiction and asked, "Does anyone have a problem with that?," reveals that only counsel agreed. This is insufficient for the court to retain jurisdiction under section 664.6. "A request for the trial court to retain jurisdiction under section 664.6 'must conform to the same three requirements which the Legislature and the courts have deemed necessary for section 664.6 enforcement of the settlement itself: the request must be made (1) during pendency of the case, not after the case has been dismissed in its entirety, (2) by the parties themselves, and (3) either in a writing signed by the parties or orally before the court.' [Citation.] The 'request must be express, not implied from other

12

language, and it must be clear and unambiguous.' [Citation.]" (*Mesa, supra*, 33 Cal.App.5th at p. 917 [quoting *Wackeen*].)[7]

Marina responds that (1) Michael and Rebecca waived the consent to jurisdiction issue by not voicing an objection to the court's stated intention to retain jurisdiction, and (2) regardless of compliance with section 664.6, the court had jurisdiction because the case had not been dismissed.

On the first point, there can be no dispute that the record shows that none of the parties consented to the trial court retaining jurisdiction under section 664.6 at the hearing and only Rebecca signed the agreement with a provision to that effect. Compliance with the statutory requirements of section 664.6 on undisputed facts presents a question of law that we can review on appeal notwithstanding a failure to raise the issue in the trial court. (*Burckhard v. Del Monte Corp.* (1996) 48 Cal.App.4th 1912, 1918; *Critzer, supra*, 187 Cal.App.4th at p. 1262.)

On the second point, the record on appeal does not include a voluntary dismissal of the entire case or even dismissal of the objections Michael and Rebecca raised to Marina's final accounting and plan of distribution. Rather, in the motion to enforce the judgment under section 664.6, Marina sought to confirm the final distribution and the trial court set a hearing on her petition for final distribution in the order on the motion. The record suggests that the trial court's jurisdiction pending at the time of the settlement—which Marina characterizes as in rem jurisdiction of a probate court over the estate—continued through its order on the motion to enforce the settlement under section 664.6. Thus, the situation here is not like that in *Wackeen* or *Mesa* where the trial court lost jurisdiction when the suit was dismissed after the parties reached a settlement and the

---

[7] Rebecca consented in writing to the court retaining jurisdiction by signing the agreement containing a provision so providing, but neither Marina nor Michael signed the agreement.

13

parties failed to personally request the court to retain jurisdiction in compliance with section 664.6. (*Wackeen, supra*, 97 Cal.App.4th at p. 441; *Mesa, supra*, 33 Cal.App.5th at p. 918.)

To be sure, the record is not clear. The trial court stated its intention to retain jurisdiction over the settlement under section 664.6. In the motion to enforce the settlement, Marina asserted (incorrectly) that the trial court's jurisdiction continued under section 664.6 by consent voiced by counsel for the parties. At the hearing on the motion to enforce the judgment, the trial court referred to the motion being brought under the court's "reservation of jurisdiction to enforce each and every term of the settlement . . . ."

The first sentence of section 664.6, subdivision (a), states that "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." This sentence indicates that the court may entertain a motion under section 664.6 without a reservation of jurisdiction, if the court's jurisdiction has not been lost by dismissal of the case. The second sentence of section 664.6, subdivision (a)—"[i]f requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement"—is directed at the problem of a trial court having lost jurisdiction over the settlement once the case is dismissed. If the court has not lost jurisdiction by dismissal when ruling on a motion to enforce a settlement under section 664.6, it need not have reserved jurisdiction by consent of the parties to grant the motion.

On this record, we cannot determine one way or the other whether noncompliance with the specific requirement in section 664.6 that the parties themselves consent to the trial court retaining jurisdiction is a sufficient basis on which to reverse the court's order.

In any event, as discussed, the parties' failure to agree to the settlement itself in compliance with section 664.6 is grounds for reversal. Moreover, as we explain in the next section, there is another basis on which we reverse the order.

14

*Matching the Material Terms of the Oral Settlement*

Even assuming arguendo, the trial court never lost jurisdiction and Marina affirmatively agreed to the oral settlement, the court's order exceeded the terms of the oral settlement. We agree with Michael that if Marina agreed to be bound by the oral settlement, "the nine-page draft written settlement agreement would have been reduced to an exact verbatim of the [oral settlement], with no new terms or conditions."

The oral settlement included these elements: (1) Marina would buy out Michael's and Rebecca's interest in the estate for payments of $32,500 each by June 14, 2018; (2) in exchange, Michael and Rebecca would waive all objections to Marina's accounting; (3) Michael and Rebecca would "agree[] to sign any document necessary to accomplish this resolution, including any assignment of a beneficial interest that is required"; (4) on June 14, 2018, Michael and Rebecca would "pick up personal property that's been previously identified and located in the garage . . . at the F Street property"; (5) the parties would bear their own attorney fees and costs; (6) counsel for Marina would submit an order reflecting "this agreement by May 30th, which is one week from today"; and (7) the court accepted the clarification to the assignment that Michael and Rebecca "are selling their interest in the estate, both on their behalf and on behalf of their heirs, on behalf of their future -- that they are selling their interest to my client through the assignment." Counsel for the parties also agreed that the assignment should be notarized and the court reporter's fees for two days of trial should be divided three ways. These are the terms that Michael and Rebecca agreed to when "voir dire'd" by the trial court.

Thereafter, Marina circulated a settlement agreement, which included, inter alia, provisions not stated in oral agreement that: (1) the personal property in question would be given to Michael and Rebecca "with receipt signed," and Michael and Rebecca "shall thereafter divide such tangible personal property between them as they shall agree, and shall hold Marina harmless for any such division, and agree to indemnify Marina for any expenses incurred with the transfer of the property"; (2) a broad mutual release of all

15

"past, present, or future" claims and damages based on any acts or omissions predating the written agreement or related to the recitals in the agreement regarding the decedent's marital and nonmarital relationships, children and property, with a Civil Code section 1542 release of unknown claims; (3) the agreement was jointly prepared and any ambiguity in the agreement would not be construed against any party; (4) the agreement did not constitute an admission of liability by any party; (5) an integration clause that the written agreement was the final agreement between the parties and superseded all prior understandings and agreements; and (6) a covenant not to sue.

In the order on Marina's motion, the court stated that Michael failed to comply with the oral settlement, "[i]n particular, he has not complied with his agreement ' . . . to sign any document necessary to accomplish this resolution, including any assignment of beneficial interest that is required,' " evidently referring to Michael's refusal to sign the written agreement. We disagree. There was no discussion at the hearing of the parties' signing an extensive written settlement agreement, which was not necessary to resolve the parties' disputes, but evidently crafted to offer additional protections to Marina. Rather, Marina was to submit a draft order embodying the terms of the oral settlement, which she did not do. In fact, as indicated in Michael's statements to the trial court, the problems in effectuating the settlement arose when Marina required a full bore settlement agreement. If the trial court's understanding of the oral settlement was that the parties would sign a written settlement agreement like this one, it should have made that explicit at the hearing. (*Hines, supra*, 167 Cal.App.4th at p. 1182, fn. 6 ["A court receiving a settlement should help to ensure that the material terms of the settlement are explicitly defined and that the parties understand and agree to be bound by those terms"].)

Assuming arguendo that Marina assented to the oral agreement, the trial court would have been correct that the agreement remained "in full force and effect" and Michael and Rebecca were bound to perform according to its terms. But, by the same

16

token, under section 664.6, the trial court was limited to enforcement of the terms of the oral settlement.

"Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810.)

" '[T]he trial court is under a duty to render a judgment that is in exact conformity with an agreement or stipulation of the parties. "If interpretation of a stipulation is in order the rules applied are those applied to the interpretation of contracts. [Citations.] It is not the province of the court to add to the provisions thereof [citations]; to insert a term not found therein [citations]; or to make a new stipulation for the parties." ' [Citations.]" (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 792.)

In this instance, by virtue of imposing the additional terms of the written agreement, the trial court exceeded the terms of the oral agreement. On this basis, as well, the trial court's order enforcing the settlement must be reversed.[8]

---

[8] Because we reverse on the grounds stated, we need not reach Michael's and Rebecca's claims that the trial court erred in ordering the clerk to sign documents on Michael's behalf and awarding attorney fees.

17

## DISPOSITION

The order appealed is reversed.  Michael and Rebecca are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
RAYE, P. J.

We concur:

/s/
MAURO, J.

/s/
MURRAY, J.